UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **BRIAN TEED,** *et al.*<br>    **Plaintiffs,**<br>v.<br>**JT PACKARD & ASSOCIATES, INC.,**<br>and<br>**S. R. BRAY CORP.,**<br>    **Defendants.** | **CIVIL ACTION No. 08-CV-303**<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO JOIN THOMAS & BETTS POWER SOLUTIONS, LLC AS A DEFENDANT** |

## ARGUMENT

Thomas & Betts Power Solutions, LLC ("Thomas & Betts" or "New JT Packard") should be substituted pursuant to Fed. R. Civ. P. 25(c) pursuant to the federal doctrine of successor liability. The doctrine is applicable because the operation of Wisconsin successor liability common law conflict with the Congressional intent in requiring the payment of minimum and overtime wages under the FLSA. If the federal successor liability doctrine was not applicable, Plaintiffs' rights under the FLSA would be extinguished. Furthermore, the doctrine is applicable in the case at hand because Thomas & Betts knew of the instant suit, Old JT Packard does not have the ability to make Plaintiffs whole, and Thomas & Betts has substantially continued the business operations of Old JT Packard. When the equities are balanced in light of these three factors, they weigh heavily towards finding that Thomas & Betts is in fact a successor and should therefore be substituted as a defendant in this matter.

**I.    PLAINTIFFS' HAVE NOT MOVED THE COURT FOR SUCCESSOR LIABILITY UNDER WISCONSIN COMMON LAW.**

Plaintiffs' motion for successor liability was not brought under the narrow exceptions under Wisconsin successor liability common law but rather the more expansive federal successor

liability doctrine.  Despite this, Thomas & Betts recites the general state common law standard that the purchaser of assets of a corporation generally do not acquire the seller's liabilities – which is not in dispute.  Plaintiffs' agree that under Wisconsin successor liability state law, a corporation like Thomas & Betts can purchase the assets of a corporation like Old JT Packard without obtaining Old JT Packard's liabilities.  It is precisely this operation of law which is in conflict with the Congressional intent in enacting the FLSA.

**II.    WISCONSIN'S SUCCESSOR LIABILITY COMMON LAW IS IN CONFLICT WITH THE FLSA AND THEREFORE THE MORE EXPANSIVE FEDERAL SUCCESSOR LIABILITY DOCTRINE IS APPLICABLE.**

Although the Seventh Circuit has not addressed whether the federal successor liability doctrine is applicable to the FLSA, the Seventh Circuit has <u>not</u> rejected such an application.  The Seventh Circuit has simply not had the opportunity to do so.  As recognized by Thomas & Betts, only the Ninth Circuit[1] has been faced with the question and the Ninth Circuit easily concluded that the same analysis utilized by federal courts in justifying the extension of potential liability to successor employers under the NLRA, Title VII, 42 U.S.C. § 1981, ERISA and Multiemployer Pension Plan Amendments Act justified the applicant of the successor liability doctrine under the FLSA as well.  *Steinbach v. Hubbard*, 51 F.3d 843, 845 (9th Cir. 1995).  Thomas & Betts points to no case finding that it is in error to apply federal successor liability doctrine to claims for overtime under the FLSA.

**A.    Use of The Federal Successor Liability Doctrine Is Well Settled In The Seventh Circuit To Protect Federally Protected Employment Rights.**

Thomas & Betts argues that Plaintiff has asked the Court to create a new federal law; however, Plaintiff does not ask the Court create a wholly new doctrine where none currently

---

[1] The Ninth Circuit found successor liability inapplicable were the purchaser did not actual obtain the assets, but simply leased the assets for three or four months for six hundred dollars.  *Steinbach*, 51 F.3d at 847.

exists. (Thomas & Betts Mem.., pp. 17-18; Dkt. 94.) The successor liability doctrine already thrives in various areas of employment law - it is not a new common law standard as was rejected by the Supreme Court in *Atherton v. FDIC*, 519 U.S. 213, 228 (rejecting the FDIC's attempt to apply a pre-*Erie* Federal Common law standard of care to bank officials). Further, the federal successor liability doctrine has been applied to employment cases post *Atherton* by the Seventh Circuit. *See Moriarty v Svec*, 164 F.3d 323, 329 (7th Cir. 1998). The Seventh Circuit explained in *Moriarty* that "*Atherton* does not preclude courts from applying appropriate federal rules in areas where Congress manifests a desire to avoid significant conflict" between federal interests and the use of state common law. *Id*. at 328 (approving the application of the federal successor liability doctrine to a claim under ERISA). The Seventh Circuit held, despite the Supreme Court's holding in *Atherton*, the circuit's approach to federal rule-making remains; "[t]hus federal instead of state successor law" was applicable to an employment law claim. *Id*. at 328.

  **B. Expanding the Use of the Successor Liability Doctrine to the FLSA Would Address the Conflict Between State Law and the Congressional Intent Enumerated in the FLSA.**

  In *Moriarty*, the Seventh Circuit identified a significant federal interest that was threatened by the state successor liability common law. That common law rule would operate to cut "off the obligation to pay a predecessor's promised [MMPA] contribution." *Id*. at 329. To protect the federal interest, as evidenced by ERISA, from the state common law rule that allows the sale of assets without liabilities, and in recognizing the conflict between the two, the Seventh Circuit applied the doctrine of successor liability post-*Atherton* in *Moriarty*. 164 F.3d at 329.

  Thomas & Betts argues that there is no similar conflict here. (Thomas & Betts Mem., pp. 27; Dkt. 94.) Not only was the conflict recognized in *Moriarty*, Thomas & Betts position that it

should not be liable to Plaintiff is, in and of itself, the very conflict that was recognized by the Seventh Circuit.  As Thomas & Betts explains in Section II of its brief, the Wisconsin successor liability common law allows a successor to purchase the assets from a predecessor without purchasing the liabilities.[2]  That is, Wisconsin successor liability common law would allow an asset sale to frustrate an employee's claim to minimum and overtime wage payments because it would cut off the obligation of the purchasing company to pay these wages.  There in lies the conflict.  As the Seventh Circuit in *Moriarty* found that the state successor liability common law conflicts with the Congressional intent behind ERISA because it would operate to cut off employer contribution to the plan, so should this Court find that Wisconsin's common law successor liability doctrine conflicts with the FLSA because it would allow employers to avoid the liability of paying minimum and overtime wages.

> **i. The FLSA establishes the strong Congressional intent that employees in this country receive minimum and overtime wages to maintain a minimum standard of living.**

In 1937, President Franklin D. Roosevelt sent a message to Congress urging the enactment of a law to ensure "all our able-bodied working men and women <u>a fair day's pay for a fair day's work</u>."  Reprinted in H.R. Rep. No. 101-260 (Sept. 26, 1989) (emphasis added).  The FLSA, as signed into law on June 25, 1938, provided three protections to employees in order to achieve the established <u>national goal</u> of eliminating "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202.  The three basic employee protections, which continue in full effect to this very day – a) the requirement for the payment of minimum wages, b) the prohibition of employment for more than forty hours in a workweek without premium or

---

[2]  Subject to various exceptions not applicable to this case.

overtime compensation, and c) prohibitions on the use of oppressive child labor. 29 U.S.C. §§ 206-07, 212.

Despite the modifications contained in the Portal-to-Portal Act, which established a statute of limitations to amend the potential of a serious impairment of employers' capital resources, the requirement of payment of overtime wages remained. Therefore, in light of all of the concerns Congress listed in the 29 U.S.C. 251(a), Congress retained the requirement that employers pay overtime. Doing so evidences a strong Congressional intent to use the overtime requirement to curb "labor conditions detrimental to the maintenance of the minimum standard of living." 29 U.S.C. § 202. Although the Congressional intent was also to limit unfair competition by employers who engaged in a race to the bottom with wages, this was address by congress with the above three basic requirements of the FLSA.

In arguing that the overtime provisions of the FLSA do not represent a clearly established national goal, Thomas & Betts cites *Barrentine v. Arkansas-Best Freight Sys., Inc.* in which the Supreme Court clearly and unequivocally stated that the "principle congressional purpose in enacting the [FLSA] was to protect all covered works from substandard wages and oppressive working hours." 450 U.S. 728, 739 (1981). A clearer statement of the Congressional intent could not be made.

Should the Court hold that successor liability is inapplicable to a case arising out of the FLSA, the likely result would be that Plaintiffs would not receive duly owed overtime compensation for their work in spite of Congresses clear direction to the contrary. Furthermore, such a holding would allow corporations facing liability for unpaid wages under the FLSA to sell off their assets or simply dissolve and reincorporate to avoid liability. Allowing corporations to participate in an asset sale which results in the extinguishing of employees' rights to minimum

wages or overtime is in direct conflict with the Congressional goal to protect workers from substandard working conditions.  That is, "judicial importation of the concept of successor liability is essential to avoid undercutting Congressional purpose by parsimony in provision of effective remedies."  *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1237 (7th Cir. 1986).  Such an injustice, operating under the guise of state successor liability common law, is exactly the harm that the federal successor liability doctrine was created to remedy.

> ii. **The Congressional intent in enacting the FLSA is similar to other employment laws which courts have utilized the federal successor liability doctrine.**

Thomas & Betts has not directed the Court to any cases that have refused to recognize the concept of successor liability in the context of the FLSA; nor could Plaintiff find such a case. Further Thomas & Betts does not cite any case in which a court refused to consider whether utilizing the doctrine of successor liability would be applicable where the case involved a federally protected employment right.  The federal successor liability doctrine is applicable to a "particular cause of action because it promoted the well-established national policy of extending protection to and providing relief to the victims of prohibited employment practices." *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 746 (7th Cir. 1985).  In applying the doctrine of successor liability, the "special concern with employment practices cannot be sufficiently underscored."  *Id*.

Both the Supreme Court and the Seventh Circuit, have found it appropriate to apply the federal successor liability doctrine to various other employment law claims including those arising out of the NLRA,[3] Title VII,[4] 42 U.S.C. § 1981,[5] and ERISA[6].  The congressional

---

[3] *Golden State Bottling Co. v. NLRB*, 414 U.S. 168 (1973) (NLRA).
[4] *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228 (7th Cir. 1986) (Title VII).
[5] *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 746 (7th Cir. 1985) (42 U.S.C. § 1981).

objective in passing both the NLRA and the antidiscrimination statutes was to "eradicate practices that arbitrarily interfered with a person's ability earn [a] livelihood." *Musikiwamba*, 760 F.2d at 746.  Similarly, the congressional objective in passing the FLSA was to "to correct and as rapidly as practicable to eliminate" "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202.  The purpose of the FLSA, as evidenced in 29 U.S.C. § 202, is just as "deserving of protection as the labor peace, anti-discrimination, and worker security policies underlying the NLRA, Title VII, 42 U.S.C. § 1981." *Steinbach*, 51 F.3d at 845.

The federal successor liability doctrine of successor liability applied to federal employment law ensure that employees' rights survive, even when their employers change their structure through mergers, asset sales, reincorporation, or other similar events.  The Seventh Circuit "is committed to the view that the general common law rule of nonliability on the part of successors is too harsh to employees for application in the context of discrimination in employment, and that the traditional common law exceptions to the nonliability rule insufficiently ease the harshness." *Wheeler*, 794 F.2d at 1237.  Similarly, application of the general state common law rule would be too harsh on employees for the application in the context of unpaid wages under the FLSA.

A conflict exists between the Congressional intent that employees receive overtime compensation and the state successor liability common law which allows an employer to skirt this requirement.  Moreover, as the Supreme Court and the Seventh Circuit have found it appropriate to apply the federal successor liability doctrine in to protect federally enacted

---

[6] *Chicago Tuck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F. 3d 48, 49 (7th Cir. 1995) (finding that the district court was not precluded by the bankruptcy proceedings from finding successor liability against the Purchasing company) (ERISA).

employment laws, successor liability is appropriate in a claim under the FLSA. Therefore, the Court must determine if doctrine is applicable to the facts before it.

### III. NOT ONLY IS THE FEDERAL SUCCESSOR LIABILITY DOCTRINE APPLICABLE TO FLSA CLAIMS, EQUITY REQUIRES THE APPLICATION HERE.

Before the Court is the task of striking a balance between competing interests at stake. On the one hand "is the interest in preventing tortfeasors from externalizing the costs of their misconduct by selling their assets free of any liabilities and distributing the proceeds to their shareholders" or in this case, the bank. *EEOC v. Vucitech*, 842 F.2d 936, 944 (7th Cir. 1988). On the other hand "is the interest in a fluid market in corporate assets, which is impeded if purchasers acquire along with the assets legal liabilities of unknown, sometimes unknowable, dimensions." *Id*. In addressing these competing interests, the Seventh Circuit has devised three factors to review in striking that fair balance this Court is seeking.

These factors are not "a set of hoops to force plaintiffs to jump through." *Vucitech*, 842 F.2d at 946. Rather, the factors are constructed to facilitate the Court efforts to determine "whether such liability would strike a reasonable balance between the interest in fully sanctioning unlawful conduct and the interest in facilitating the market in corporate and other productive assets." *Id*. The factors recognize the conflicting interests and ensure equity through requiring a showing that the purchaser had notice of the potential liability, that the predecessor no longer can make plaintiff whole and that the successor is continuing the business. *Musikiwamba*, 760 F.2d at 750-53.

### A. Because Thomas & Betts Had Notice of the Complaint, the Court Does Not Offend Equity By Substituting Thomas & Betts as a Successor.

The *Musikiwamba* factors require notice, nothing more, nothing less. The Seventh Circuit explained that without notice, it would be "grossly unfair, except in the most exceptional

circumstances, to impose successor liability on an innocent purchaser when … the successor did not have the opportunity to protect itself by an indemnification clause in the acquisition agreement or in a lower purchase price." *Musikiwamba*, 760 F.2d at 750. The Seventh Circuit did not state that it would be inequitable to extend liability to the purchaser who is aware of the liability and purchases the assets in spite of such knowledge. Thomas & Betts argues for notice plus some other factor where no case has required anything other than actual notice.

Thomas & Betts argues that because it was unable to obtain an indemnification agreement from Old JT Packard and that it could not negotiate a lower price for the assets in light of the potential liability, it would be inequitable to hold it liability for Plaintiffs claims. The equity and fairness concern at issue here is that the purchaser must have the opportunity to look before jumping in. Whether Thomas & Betts decided it needed an indemnification agreement or if it factored the potential liability into its calculation of its bid prices is not at issue. It is whether or not Thomas & Betts was given the opportunity to do so by receiving notice of the suit. Had Thomas & Betts not known of the suit, it would obviously be unfair to hold them liable under the federal successor liability doctrine. However, that Thomas & Betts was on notice that these claims were outstanding; holding them as successors does not offend equity.

Furthermore, Thomas & Betts argues that it did not have the opportunity to negotiate the purchase price in light of the potential liability because Old JT Packard's assets were sold at auction. However, this does not take into account that Thomas & Betts, along with the other purchasers, likely took the potential liabilities of Old JT Packard into their calculation of a bid price. No one forced Thomas & Betts to purchase Old JT Packard.

The equity concern before the Court is that it would be unfair to strap an actual innocent purchaser – innocent meaning without knowledge of the liability - with that liability. That

concern is not present here where Thomas & Betts knew of the potential liability, had the opportunity to research the law on the liability, and modify their bid price and actions accordingly. Successor liability has been found by other courts where the successor received no benefit from the violations and had no opportunity to negotiate an indemnity clause. *See Bates v. Pacific Maritime Ass'n*, 744 F.2d 705, 710 (9th Cir. 1984) (where no purchase agreement was negotiated). That Thomas & Betts purchased the assets of Old JT Packard with knowledge of this does not allow them to call themselves an innocent purchaser and avoid successor liability.

### B. Because Old JT Packard Cannot Make Plaintiffs Whole and Holding Thomas & Betts Liable Does Not Interrupt The Free Flow of Assets, the Court Does Not Offend Equity By Substituting Thomas & Betts as a Successor.

The second *Musikiwamba* factor is whether the predecessor is currently able to provide the relief requested. *Musikiwamba*, 760 F.2d at 750-53. It would be inequitable to hold "a successor liable when the predecessor is fully capable to providing relief." *Wheeler*, 794 F.2d at 1236. Thomas & Betts does not argue that Old JT Packard can, in any way, make Plaintiffs whole for its failure to pay overtime compensation – Old JT Packard has no assets. Old JT Packard has sold all its assets to Thomas & Betts which is now New JT Packard.

Thomas & Betts props up its argument by focusing only on whether the predecessor, Old JT Packard, could have provided any relief. In doing so, Thomas & Betts moves away form the equity based reasoning the Seventh Circuit discussed in considering the predecessor's ability to make the plaintiff whole prior to the transfer of interest. In *Musikiwamba*, the Seventh Circuit stated that successor liability may be inappropriate where prior to the succession the predecessor lost its ability to pay a judgment. 760 F.2d at 751. Soon after deciding *Musikiwamba*, the Seventh Circuit took a step back from this position in *Vucitech*. There, the Seventh Circuit reversed the district court's decision because the district court attached "undue weight to the fact

that because [the predecessor] had gone broke, there was an element of windfall in making [the purchaser] liable as its successor." *Vucitech*, 744 F.2d at 945. The Seventh Circuit recognized that its decision in *Musikiwamba* did not impose "an ironclad requirement in all cases of successor liability." *Id*. at 946. Rather, it is the equities that matter.

In *Musikiwamba*, the Seventh Circuit stated that the predecessor's ability to pay before the sale is informative because of concern regarding the public interest in the "free transfer of capital and the reorganization of unprofitable businesses." *Musikiwamba*, 760 F.2d at 751. The Seventh Circuit was concerned that a company may "have difficulty selling its assets or business for a decent price because successors will be unwilling to assume a business involved in substantial time-consuming and expensive litigation when the assets themselves lack substantial value." *Id*. In reviewing the facts before the Court, it is evident that the assets of Old JT Packard did not lack substantial value. They were not assets in distress because they had been split from S.R. Bray Corp. (Thomas & Betts Mem. p. 6, Dkt. 93.) Old JT Packard was not staring at financial death; it had sixty million dollars in revenue in 2009. (Sears Dep. 23:24-24-3; 25:20-21.) Old JT Packard was profitable in 2009 to the tune of about five million dollars. (Sears Dep. 25:2; 26.1-2.) Old JT Packard's assets were not worthless; they were sold for twenty-two million and twenty-eight million dollars at auction. (Sears Dep. 44:23-45:7; Sears Dep. Ex. 3.) Thomas & Betts knew Old JT Packard was involved in substantial and time consuming litigation in this matter when it made the decision to purchase Old JT Packard assets. Here the transfer of assets took place in light of this litigation and the potential of liability to Thomas & Betts; therefore the Seventh Circuit concerns about successor liability chilling the free transfer of assets is not at issue here.

### C. Thomas & Betts is Operating New JT Packard as the Same Business.

Thomas & Betts does not argue that it has continued Old JT Packard business operations. Thomas & Betts does not argue that it (1) uses the same plant as Old JT Packard; (2) it uses the same or substantially the same work force as Old JT Packard; (3) that it uses the same or substantially the same supervisory personnel as Old JT Packard; (4) that the same jobs exist under substantially the same working conditions as Old JT Packard; (5) that it uses the same machinery, equipment, and methods of production Old JT Packard; and (6) that it produces the same product Old JT Packard. *Wheeler*, 794 F.2d at 1236 n. 7 (citing *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086 (6th Cir. 1974).

Rather, Thomas & Betts points its finger at Steve Bray and Keith Bjelajac claiming they should shield Thomas & Betts from liability because they allegedly come under the definition of employers under 29 U.S.C. § 203(d). Plaintiffs lack any evidence that Steve Bray and Keith Bjelajac exercised the requisite control and direction of the compensation of the Plaintiffs to bring them under the FLSA. Thomas & Betts simply put before the Court an affidavit by a current employee of New JT Packard stating that these individuals made the claimed decisions. (Thomas & Betts Mem. p 37, Dkt. 94.) However, this argument fails as it is not Steve Bray and Keith Bjelajac who continue to operate JT Packard. It is not Steve Bray and Keith Bjelajac who hired 254 of Old JT Packard's 296 employees. (Thomas & Betts Mem. p 12, Dkt. 94.) It is not Steve Bray and Keith Bjelajac who are currently using the same building as Old JT Packard at 275 Investment Court, Verona, Wisconsin 53593 (Sears Dep. 65:2-9.) It is not Steve Bray and Keith Bjelajac who are servicing all the same customers as Old JT Packard. (Sears Dep. 46:14-16; 46:23-47:3; 47:18-23.)

In balancing the interests, the Court should strike a reasonable "balance between the interest in fully sanctioning unlawful conduct and the interest in facilitating the market in corporate and other productive assets." *Vucitech*, 842 F.2d at 946. The sanctioning is not of a particular party, but rather the interest of up holding and enforcing the Congressional intent. Where a purchasing party is aware of a lawsuit, the predecessor can no longer provide the make whole relief, and there has been a substantial continuity of business, federal successor liability is appropriate to vindicate the Congressional intent that employees receive proper compensation under the FLSA.

IV.   **LIQUIDATED DAMAGES SHOULD BE AWARDED BECAUSE THEY ARE NOT PUNITIVE IN NATURE AND THOMAS & BETTS HAS FAILED TO MEET ITS BURDEN IN ESTABLISHING THAT JT PACKARD ACTED IN GOOD FAITH.**

As a successor, New JT Packard should be liable for liquidated damages, should such an award be made, in order to make the Plaintiffs whole. An employer who violates the overtime provisions of the FLSA shall be liable for both the unpaid overtime compensation and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). When an employer violates the FLSA, an award of liquidated damages is the rule, not the exception. *See Walton v. United Consumers Club*, 786 F.2d 303, 310 (7th Cir. 1986).

Thomas & Betts' argument against liquidated damages hinges on the claim that New JT Packard is "truly 'innocent'" and is based on a belief that the liquidated damages are punitive in nature. They are not. Liquidated damages "constitute[] compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damage." *Brooklyn Sav. Bank v. O'Neil*, 325 U.S. 893, 902 (1945) (internal citation omitted). Recognizing that a failure to pay overtime premiums causes damages beyond what a simple back pay could remedy, the Supreme Court explained that "reparations to

restore damage done by such failure to pay on time must be made to accomplish Congressional purposes." *Id*. In other words, rather than litigating the particular damages each employee has suffered from the delayed payment of wages, the statue simply authorizes an award of liquidated damages to make the employees whole.

Moreover, the Seventh Circuit has made it clear that doubling the amount of the plaintiffs' recovery as liquidated damages is, "not some disfavored penalty." *Id*. While it is true that the Portal to Portal Act (29 U.S.C. §§251 *et seq.*) allows for the Court to exercise discretion and award a lesser amount than the full double damages, the presumption is still in favor of doubling. *Walton*, 786 F.2d at 310. This presumption may only be overcome by the ***employer's*** showing, "that that the act or omission giving rise to [the underlying claim for a violation of the FLSA] was in good faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the Fair Labor Standards Act." 29 U.S.C. §260 (emphasis added). Thomas & Betts has not met this burden.

Despite the clear burden on a Thomas & Betts to prove that double damages are not applicable, Thomas & Betts attempts to escape their burden by claiming that they are, "placed in the completely untenable position of attempting to prove the "good faith" of the owners and officers of a company that no longer exists, who have no connection to [New JT Packard], and who have also formed a new company, PowerPlus, with which [New JT Packard] is both competing and litigating." (Thomas & Betts Mem. p. 42, Dkt. 94) The fact that New JT Packard is currently involved in litigation with the individuals who may have information necessary to set forth a defense is immaterial to the issue at hand. As is made clear above, the only way that an employer may escape liability for liquidated damages is by an ***affirmative*** showing of good faith

and reasonable grounds by the employer. Thomas & Betts fails to make such an affirmative showing of good faith and reasonable grounds.

Thomas & Betts claims that they are now in "an untenable position" and that the "equities weigh heavily in their favor" and thus no liquidated damages should be awarded. Thomas & Betts certainly has the ability to obtain the information they need to set forth the defense under 29 U.S.C. § 260 should they wish to do so, they have identified where the individuals who would have the information work, and they are currently in contact with these individuals through other litigation.

Notwithstanding the fact that "equities" have nothing to do with a determination of liquidated damages, the equities on this issue are not heavily in favor of Thomas & Betts. Plaintiffs should not be disadvantaged in their ability to recover fully simply because New JT Packard is faced with the unpleasant prospect of asking for help (or at least cooperation) from individuals who they are now suing. As New JT Packard has not made the requisite showing that would allow for the denial of liquidated damages, the Court should hold that New JT Packard is liable for liquidated damages absent a showing of good faith and reasonable ground pursuant to 29 U.S.C. § 260.

## **CONCLUSION**

For the reasons set forth herein, and those set out in Plaintiff's moving papers, Plaintiffs respectfully request this Court grant Plaintiff's motion join Thomas & Betts Power Solutions, LLC as a defendant in this matter.

Respectfully submitted this 22nd day of September, 2010.

                                    **CROSS LAW FIRM, S.C.**
                                    **Attorneys for Plaintiffs**

By: **s/LARRY JOHNSON**
Larry A. Johnson
Noah Reinstein
Nola J. Hitchcock Cross

Cross Law Firm, S.C.
The Lawyers Building
845 N. 11th Street
Milwaukee, WI 53233
(414) 224-0000
ljohnson@crosslawfirm.com