IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRIAN TEED,

      Plaintiff,

   v.

JT PACKARD & ASSOCIATES, and
S.R. BRAY CORP.,

      Defendants.

OPINION AND ORDER

08-cv-303-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARCUS CLAY,

      Plaintiff,

   v.

JT PACKARD & ASSOCIATES, and
S.R. BRAY CORP.,

      Defendants.

OPINION AND ORDER

09-cv-313-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiffs Brian Teed and Marcus Clay filed separate suits against defendants JT Packard & Associates and S.R. Bray Corp. under the Fair Labor Standards Act to recover overtime pay. Plaintiffs' actions were conditionally certified as a collective action under 29

1

U.S.C. § 216(b) in 2008.   In late 2009, defendants filed a motion to dismiss or stay proceedings pending the outcome of a state receivership proceeding; the court denied that motion because defendants failed to show that this case met the requirements for abstention under <u>Burford v. Sun Oil</u>, 319 U.S. 315 (1943).  Dkt. #75.[1]  In May 2010 the court allowed counsel for defendants to withdraw from representation because defendants had sold all of their assets to third parties in receiverships.  Dkt. #86.  When defendants did not appear for a telephonic conference in August, plaintiffs informed the court that they intended to file a motion for substitution under Federal Rule of Civil Procedure 25(c).  Dkt. #87.

Plaintiffs have now filed a motion to substitute Thomas & Betts for defendants JT Packard & Associates and S.R. Bray Corp. under  Fed. R. Civ. P. 25(c).  (I will adopt the terminology of the parties by referring to the former employer JT Packard as "Old JT Packard" and the entity now owned by Thomas & Betts as "New JT Packard.") The parties do not dispute that Thomas & Betts acquired the assets of Old JT Packard.  The question is whether Thomas & Betts's purchase subjects it to potential liability for Old JT Packard's alleged failure to pay overtime wages.  Thomas & Betts believes that the court should apply the Wisconsin standard for successor liability; plaintiffs believe the federal standard should apply.  This circuit's precedent weighs in favor of applying the federal standard for successor

---

[1]  The docket numbers are taken from case no. 08-cv-303-bbc.

2

liability in this case.  I find that plaintiffs have satisfied that standard because Thomas & Betts had notice of the predecessor's liability and there was substantial continuity between the two businesses.  Accordingly, I will grant the motion for substitution.

From the affidavits and depositions accompanying the parties' briefs, I find that the following facts are undisputed.


UNDISPUTED FACTS

In 2006, defendant S.R. Bray Corporation acquired JT Packard & Associates with a portion of a $60 million loan from Canadian Imperial Bank of Commerce.  By 2008, Old JT Packard was S.R. Bray's most valuable asset and served as a guarantor for some of S.R. Bray's obligations.  Old JT Packard earned approximately $60 million in revenues and $5 million in profits in 2009.  Unlike Old JT Packard, S.R. Bray was not profitable during this period.  It relied on Old JT Packard as a source of revenue to repay its loans until it ultimately defaulted on its $60 million loan to Canadian Imperial.

After S.R. Bray defaulted in early 2009, Canadian Imperial assumed control over Old JT Packard and appointed a three person board of directors, including a chief restructuring officer.  Canadian Imperial instructed M&I Bank, one of Old JT Packard's banks, to transfer any funds deposited into Old JT Packard's account to Canadian Imperial.  This directive caused some of old JT Packard's checks to be returned as non-payable for insufficient funds.

3

Eventually, Canadian Imperial changed its policy to leave sufficient funds in Old JT Packard's accounts to pay for business expenses until its assets could be sold. However, the chief restructuring officer had to approve business expenses during this period.

In July 2009, S.R. Bray was forced into Chapter 7 bankruptcy. The proceeding was dismissed on the condition that Old JT Packard's assets would be sold at auction. In November 2009, Old JT Packard was placed into receivership under Chapter 128 of the Wisconsin statutes. The Circuit Court for Dane County presided over the sale and approved its "bidding terms and procedures." Each of the three bidders that participated in the auction process had to accept the Asset Purchase Agreement.

Section 2.03 of the Asset Purchase Agreement listed those assets and liabilities that were included in the sale. By incorporating Schedule 4.01(e) from the Company's Disclosure Schedule, the agreement excluded plaintiffs' claims from those liabilities that would be transferred to the purchaser. According to the description in Schedule 4.01(e), the "Brian Teed v. JT Packard (Excluded Liability)" and "Marcus Clay v. JT Packard (Excluded Liability)" lawsuits were for unpaid overtime wages. The description included a recent order signed by Magistrate Judge Crocker explaining that Old JT Packard's assets would be sold to satisfy the parent company's debts and the company would then have no assets with which to satisfy a judgment. The order noted that "plaintiffs intend to pursue both lawsuits under a theory of successor liability against defendant's buyer."

4

During the sales process, Old JT Packard gave potential buyers a presentation on the organization, including its strengths, weaknesses, sales and customers.  In that presentation, potential purchasers were informed of the plaintiffs' lawsuits and were told that the liabilities would not be included in the sale of the assets.  Before the auction, plaintiffs' counsel objected to the proposed language of the sale order because it did not contain language indicating that the purchaser was on notice of plaintiffs' lawsuits and that plaintiffs would not be prevented from continuing their actions against the purchaser.

Old JT Packard's assets were sold under a "turn based auction format" in which each of the three bidders had the opportunity to make a bid in each round.  After twenty-three rounds, Thomas & Betts was the high bidder.  It purchased the assets for approximately $22 million.

On January 19, 2010, the Circuit Court for Dane County approved the Old JT Packard asset sale "free and clear of all liens, claims, encumbrances, and other interests of any kind."  The court included the following language related to plaintiffs' claims:

> [Thomas & Betts] shall not be deemed, as a result of any action taken in connection with the purchase of the Assets, to: (a) be a legal successor, or otherwise be deemed a successor to the Assignor; (b) have, de facto or otherwise, merged with or into the Assignor; or (c) be a mere continuation or substantial continuation of the Assignor or the enterprise of the Assignor.
>
> * * * *
>
> 19.  [Thomas & Betts] is on notice of the Wage and Hour Actions, which has

5

been disclosed in the Purchase Agreement and Schedule 4.01(e). . .  Nothing
in this Order, or the Purchase Agreement, shall bar or otherwise prohibit the
plaintiffs . . . from asserting any and all claims they may have against [Thomas
& Betts], provided, however that [Thomas & Betts] and all other interested
parties may assert any and all defenses which any of them may have to such
claims.

The employees of Old JT Packard were terminated after the asset sale, but Thomas

& Betts made offers of employment to 254 of the 296 former employees of Old JT Packard.

Thomas & Betts used the JT Packard trade name, operated out of Old JT Packard's facility,

used the same phone number and offered goods and services similar to those offered by Old

JT Packard.  New JT Packard implemented a new reporting structure and replaced senior

leadership.


OPINION

Fed. R. Civ. P. 25(c) provides that, "[i]f an interest is transferred, the action may be

continued by or against the original party unless the court, on motion, orders the transferee

to be substituted in the action or joined with the original party. . . ."  Rule 25 provides the

procedural mechanism for the substitution of a successor in interest, but it "does not

substantively determine what actions survive the transfer of interest."  ELCA Enterprises,

Inc. v. Sisco Equip. Rental & Sales, Inc., 53 F.3d 186, 191 (8th Cir. 1995); see also Panther

Pumps & Equip. Co., Inc. v. Hydrocraft, Inc., 566 F.2d 8, 24-25 (7th Cir. 1977).  In this

6

case, deciding whether the action survived the transfer of interest turns on the liability of successors under the FLSA.  The FLSA is silent on the issue of successor liability, creating a choice of law question.  Plaintiffs argue that the federal standard for successor liability controls;  Thomas & Betts believes a Wisconsin standard should apply.

### A.   Federal vs. State Law

#### 1.   State common law successor liability

The general common law rule is that the buyer of a company's assets does not acquire the debts and liabilities of the seller.  Golden State Bottling Co. v. NLRB, 414 U.S. 168, 182 n.5 (1973); see also 15 W. Fletcher, Cyclopedia of the Law of Corporations § 7122.  In Wisconsin, as in other states, there are a few narrow exceptions to this rule: when "there is an express agreement to assume the liabilities, where an agreement to assume the liabilities can be implied, where there is a de facto consolidation or merger of the corporations, where the transaction was fraudulent, or where the purchasing company is a mere continuation of the selling company."  Id.  See also Columbia Propane, L.P. v. Wisconsin Gas Co., 2003 WI 78, ¶¶ 18-19, 661 N.W. 2d 776, 784,  261 Wis. 2d 70, 87.

#### 2.  Origins of federal successor liability

In <u>John Wiley & Sons, Inc. v. Livingston</u>, 376 U.S. 543, 550-51 (1964), and <u>Golden State Bottling Co.</u>, 414 U.S. at 182-85, the Supreme Court held that it was necessary to liberalize general common law successorship principles in cases brought under the Labor Management Relations Act and the National Labor Relations Act to achieve the objectives of those laws.  The Court recognized that permitting employees to recover for past unfair labor practices when there was substantial continuity between the employers could avoid labor unrest and protect employees against sudden changes in the corporate structure.  <u>Id.</u>, at 182-85.  These interests that motivated the enactment of the NLRA and LMRA were served at a minimal cost to the successor because its potential liability could "be reflected in the price he pays for the business, or he may secure an indemnity clause in the sales contract . . ."  <u>Id</u>. at 185 (quoting <u>Perma Vinyl Corp.</u>, 164 NLRB 968, 969 (1967)).

3.  <u>Extension to other employment statutes</u>

In <u>Musikiwamba v. ESSI, Inc.</u>, 760 F.2d 740, 745-46 (7th Cir. 1985), the court of appeals applied the reasoning in <u>Golden State Bottling</u> and <u>John Wiley</u> to employment actions outside the NLRA and LMRA.  The court identified three factors that warranted the application of federal successor liability to employment discrimination cases: "(1) the overriding congressional policy against unfair employment practices;  (2) the helplessness of the victim to protect his rights when ownership of the business changes;  and (3) the ability

8

of the successor to provide relief at a minimum cost." Wheeler v. Snyder Buick, Inc., 794 F.2d 1228, 1236 (7th Cir. 1986)(citing Musikiwamba, 760 F.2d at 746).

The Court of Appeals for the Seventh Circuit has not yet addressed the applicability of successor liability to the FLSA, but it has consistently applied a federal standard in other employment related actions. Moriarty v. Svec, 164 F.3d 323 (7th Cir. 1998) (ERISA); Chicago Truck Drivers, Helpers, and Warehouse Workers Union Pension Fund v. Tasemkin, 59 F.3d 48 (7th Cir. 1995) (ERISA); EEOC v. G-K-G, Inc., 39 F.3d 740 (7th Cir. 1994) (ADEA); EEOC v. Vucitech, 842 F.2d 936 (7th Cir. 1988) (Title VII); Wheeler, 794 F.2d 1228 (Title VII); Musikiwamba, 760 F.2d 740 (42 U.S.C. § 1981); see also Hall v. Norfolk Southern Railway Co., 469 F.3d 590 (7th Cir. 2006) (assuming that federal standard would apply to claim under Federal Employers Liability Act). In fact, Thomas & Betts has not identified any case in this circuit in which the court of appeals relied on a state standard to determine successor liability under a federal statute. Those courts that have considered successor liability under the FLSA have concluded that a federal standard should apply. Steinbach v. Hubbard, 51 F.3d 843 (9th Cir. 1995) (applying federal standard to FLSA claim); Kaur v. Royal Arcadia Palace, Inc., 643 F. Supp. 2d 276, 289 n.10 (E.D. N.Y. 2007) (same).

The justifications for applying successor liability to employment claims outside the NLRA apply equally to the FLSA. Congress enacted the FLSA to eliminate labor conditions

9

that were "detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202.  This indicates a strong congressional policy against unfair employment practices.  The second justification supporting successor liability is that "[t]he victim of illegal employment practice is helpless to protect his rights against an employer's change in the business."  <u>Musikiwamba</u>, 760 F.2d at 746.  A plaintiff with an FLSA claim is in no better position to protect his rights than a person with a discrimination claim.  Finally, relief can be had at a minimal cost because a purchaser has the opportunity to purchase at a price that reflects any potential liabilities.  <u>Golden State</u>, 414 U.S. at 185.

4.  <u>Recent decisions</u>

Thomas & Betts believes that the Supreme Court's decision in <u>Atherton v. FDIC</u>, 519 U.S. 213 (1997), casts doubt on the validity of past cases regarding successor liability and requires application of Wisconsin's standard.  In <u>Atherton</u>, the Court cautioned against the creation of "'federal common law' in the strictest sense, *i.e.*, a rule of decision that amounts, not simply to an interpretation of a federal statute or a properly promulgated administrative rule, but, rather, to the judicial 'creation' of a special federal rule of decision."  <u>Id.</u> at 218 (internal citations omitted).  Before fashioning a rule of federal common law, "the guiding principle is that a significant conflict between some federal policy or interest and the use of

state law . . . must first be specifically shown." Id. (quoting Wallis v. Pan American Petroleum Corp., 384 U.S. 63, 68 (1966)).

Thus far, the Court of Appeals for the Seventh Circuit has not interpreted Atherton as mandating a change from previous cases. In Moriarty, 164 F.3d at 327-28, a successor argued that the district court erred in applying a federal standard to ERISA because the court did not show a significant conflict with a federal interest through the application of state law. The court of appeals did not read anything in Atherton as undermining its previous decision in Artistic Furniture, which used the federal standard because the state standard would cut off contributions, conflicting with the federal interest that animated ERISA. Id. at 329 (citing Upholsterers' International Union Pension Fund v. Artistic Furniture of Pontiac, 920 F.2d 1323, 1329 (7th Cir. 1990)). The court read Atherton as "simply remind[ing] federal courts that Erie is still the law and that we are not free to fashion federal rules around a statute without identifying a significant conflict created by the application of state common law." Moriarty, 164 F.3d at 328.

In another case, the court of appeals adhered to its pre-Atherton standard regarding successor liability under Title VII without suggesting that Atherton required a re-examination of precedent. Worth v. Tyer, 276 F.3d 249, 260 (7th Cir. 2001) (citing Vucitech, 842 F.2d at 945 ("When the successor company knows about its predecessor's liability, knows the precise extent of that liability, and knows that the predecessor itself would not be able to pay

11

a judgment obtained against it, the presumption should be in favor of successor liability . . .")).  It may be that the court did not discuss <u>Atherton</u> because the parties failed to raise it, but <u>Worth</u> may be yet another indicator that the court of appeals does not view <u>Atherton</u> as overruling or undermining prior cases.

The court of appeals derived its federal successor liability standard from Supreme Court cases in which the application of traditional state common law exceptions to successor liability would deny relief.  <u>Musikiwamba</u>, 760 F.2d 745-46.  The conflict necessary to satisfy <u>Atherton</u> may be the same conflict that prompted the liberalization of the common law standard in the first place.  This  would explain the lack of significant developments in successorship law in the more than ten years since the Supreme Court's decision in <u>Atherton</u>.

This court has no authority to overrule or disregard circuit precedent.  Because that precedent requires a conclusion that federal law applies to this case, I must reject Thomas & Betts's argument to apply Wisconsin's standard for successor liability.


B.  <u>Applying the Federal Standard</u>

The next question is whether plaintiffs meet the federal standard for successor liability.  <u>Musikiwamba</u>, 760 F.2d at 750.  In some cases the court of appeals has considered three factors when deciding whether to impose successor liability: (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets

12

of the predecessor; (2) the ability of the predecessor to provide relief; and (3) whether there

is a continuity in operations and work force of the successor and predecessor employers.  Id.

at 750-51 (adapting test from a nine-part test in EEOC v. MacMillan Bloedel Containers,

Inc., 503 F.2d 1086, 1091 (6th Cir. 1971)); Wheeler v. Snyder Buick, Inc., 794 F.2d at

1236-37.  In other cases, the court has ignored the second factor and has imposed liability

when there is sufficient continuity between the two companies and the buyer has notice of

the claims.  Artistic Furniture, 920 F.2d at 1327; Moriarty, 164 F.3d at 329;  G-K-G, Inc.,

39 F.3d at 747-48. Because the parties do so, I will apply the three-factor test from

Musikiwamba.


1. Notice

       A buyer cannot be held liable if it was not aware of the plaintiffs' claims when it made

the purchase.  Musikiwamba, 760 F.2d at 752.  Thomas & Betts does not deny that it had

notice of the claim before the sale of assets.  In the initial presentation to potential buyers,

Old JT Packard offered a slide that explained the existence of this lawsuit.  In addition,

included in the documents for the asset purchase agreement was schedule 4.01(e), which

described specific litigation that would be excluded from the sale of assets.  This description

contained a recent order from this court explaining that "plaintiffs intend to pursue both

lawsuits under a theory of successor liability against defendant's buyer."  The state court's

order approving the sale explained that Thomas & Betts "is on notice" of plaintiffs' actions and nothing in the order "shall bar or otherwise prohibit the plaintiffs . . . from asserting any and all claims [against Thomas & Betts]."

Despite conceding notice, Thomas & Betts argues that notice is ineffective unless the buyer has an opportunity to negotiate the price to reflect potential liability or obtain an indemnification agreement from the seller.  This argument is not persuasive for several reasons.

First, although Thomas & Betts could not negotiate directly with Old JT Packard regarding the purchase price, Thomas & Betts was free to take any potential liability into consideration when making a bid.  Second, the court of appeals has never held that an inability to obtain an indemnification agreement is dispositive.  Rather, in cases such as Tasemkin, 59 F.3d at 50-51, and Artistic Furniture, 920 F.2d 923, the court found notice to be adequate even when the seller was in bankruptcy or "nearing the brink" of it.

More generally, Thomas & Betts is wrong to argue that the court of appeals has interpreted the first factor as requiring something more than "mere notice." E.g., G-K-G, Inc., 39 F.3d at 748 (notice requirement satisfied because buyer "was informed prior to the purchase that an age-discrimination complaint was pending against G-K-G").  In determining whether notice is adequate, the court has focused on whether the buyer had a sufficient opportunity to make an informed decision.  Musikiwamba, 760 F.2d at 752 (purchaser did

14

not have adequate notice when it did not learn of claims until day of sale because "a pleading filed at the Eleventh Hour naming the successor as a defendant clearly gives a successor little if no time to reconsider a sale that for all intents and purposes has been completed"). It cannot be disputed that Thomas & Betts had all the information it needed and sufficient time to consider its bid.

Alternatively, Thomas & Betts argues that it did not have notice of potential liability because the asset purchase agreement excluded these lawsuits from the sale. That might be a winning argument under the state common law standard, but Thomas & Betts does not point to any cases in which the court of appeals or any other court concluded that such a disclaimer was dispositive or even relevant under the federal successor liability standard. See, e.g., Finnerty v. Wireless Retail, Inc., 624 F. Supp. 2d 642, 657 (E.D. Mich. 2009) (buyer "cannot merely contract away successor liability under the prevailing law"). Again, Thomas & Betts is attempting to insert requirements that are not part of the test in this circuit. Because Thomas & Betts was aware of plaintiffs' claims before the sale, the notice requirement is satisfied.

2. Availability of relief

The predecessor's ability to provide relief is relevant because it would be unfair to hold a successor liable when the predecessor could provide relief. Musikiwamba, 760 F.2d

15

at 750. This factor has two parts: (1) whether the predecessor could provide relief prior to the acquisition; and (2) whether the predecessor could provide relief after the acquisition.

With respect to the second part, both parties agree that Old JT Packard can no longer provide relief. This supports a finding of successor liability because plaintiffs would otherwise lack a remedy for the alleged violations of the FLSA. Thomas & Betts argues that JT Packard's former CEO and CFO fall within the definition of employer for purposes of the FLSA, but other than making the suggestion that these potential defendants might be liable, Thomas & Betts has not demonstrated that they could satisfy a judgment for the alleged violations.

The parties dispute whether Old JT Packard could have provided relief to plaintiffs before the sale. Plaintiffs point to the $5 million in profits earned by Old JT Packard in 2009 as clear evidence that they could have recovered but for the sale of assets, but this fact does not fully reflect the financial health of Old JT Packard. Old JT Packard guaranteed the loans of S.R. Bray Corp with its assets, including its bank account, which allowed Canadian Imperial to withdraw all funds deposited into the account. Plaintiffs do not argue that their claims would take priority over S.R. Bray's debt to Canadian Imperial.

However, even if I assume that plaintiffs could not have obtained relief from Old JT Packard, that does not mean that plaintiffs' motion for substitution must be denied. As noted above, in some cases, the court of appeals has declined to consider a former employer's

16

ability to pay in determining whether to impose successor liability.  <u>Artistic Furniture</u>, 920

F.2d at 1327; <u>Moriarty v. Svec</u>, 164 F.3d at 329;  <u>G-K-G, Inc.</u>, 39 F.3d at 747-48.  Even in

cases in which the court applied this factor, the court has stated that the the predecessor's

inability to provide relief before the sale is not dispositive.  <u>Vucitech</u>, 842 F.2d 945-46;

<u>Tasemkin</u>, 59 F.3d at 51.

In discussing this factor in <u>Musikiwamba</u>, 760 F.2d at 751, the court identified several

reasons for hesitation when a predecessor could not have satisfied a judgment before the sale:

> A company on the verge of bankruptcy may find itself deluged with
> meretricious claims for employment discrimination as employees see the
> prospect of a deep-pocket to provide relief. The failing company might also
> have to dissipate substantial but desperately needed assets to defend against
> these lawsuits. In addition, that company will have difficulty selling its assets
> or business for a decent price because successors will be unwilling to assume
> a business involved in substantial time-consuming and expensive litigation
> when the assets themselves lack substantial value.

More generally, the court was concerned about the possibility that imposing successor

liability could "severely inhibit the reorganization or transfer of assets of a failing business."

<u>Musikiwamba</u>, 760 F.2d at 751.

Thomas & Betts has not shown that such concerns are present in this case.  Plaintiffs

filed their lawsuits before S.R. Bray went into receivership and there is no suggestion that

plaintiffs timed their claims with the hope that a company with deeper pockets would

assume control.  Further, it is not likely that imposing successor liability on Thomas & Betts

17

would inhibit business.  Old JT Packard's assets had considerable value.  The company was quite profitable.  Although S.R. Bray's debt might have prevented plaintiffs from obtaining an enforceable judgment, it does not appear that Thomas & Betts acquired any of that debt. Thus, there is little reason to believe that a company such as Old JT Packard would have had difficulty finding a buyer, even if potential liability for employment claims had accompanied the sale.

3.  Continuity

The last factor is continuity in operations and work force of the successor and predecessor employers.  Musikiwamba, 760 F.2d at 751.  The following factors are relevant to this determination:

- use of the same plant;

- use of same or substantially same work force;

- use same or substantially the same supervisory personnel;

- same jobs existing under substantially the same working conditions;

- use of the same machinery, equipment, and methods of production; and

- production of the same product or service.

MacMillan, 503 F.2d at 1094.

In this case it is undisputed that New JT Packard operates out of the same facility as

18

Old JT Packard and continues to use the trade name "JT Packard."  The new entity hired

254 of 296 former Old JT Packard employees who continue to work under conditions similar

to the ones they enjoyed before.  Plaintiffs offer sufficient evidence to support a finding of

substantial continuity between the two employers.  Moreover, less continuity is required

since plaintiffs are seeking only monetary damages.  <u>Musikiwamba</u>, 760 F.2d at 751.  In any

event, Thomas & Betts waived any argument on this factor by ignoring it in its opposition

brief.


4.  "<u>Comity</u>"

Finally, Thomas & Betts argues that interests in comity weigh against application of

federal successor liability in this case.  In particular, Thomas & Betts says that permitting

the plaintiffs to proceed on their federal claims will "circumvent the state court process."

"Comity" is not part of the test for federal successor liability.  Even if it were, however,

imposing liability in this case does not show disrespect to the state court because that court

acknowledged in its order plaintiffs' right to seek relief under the FLSA.


5. <u>Conclusion</u>

Considering the three factors from <u>Musikiwamba</u> and the particular facts of this case,

I conclude that plaintiffs have satisfied the federal standard for successor liability.  Thomas

& Betts had notice of plaintiffs' claims and potential liability well before the sale of assets occurred; Old JT Packard is unable to provide relief to plaintiffs after the sale; and a substantial continuity exists between Old JT Packard and New JT Packard.  The only factor that favors Thomas & Betts is that S.R. Bray's debts might have prevented Old JT Packard from satisfying a judgment before the sale.  However, this factor is not dispositive because Old JT Packard's own financial health made it an attractive business for another company to obtain.

## C. Liquidated Damages

In response to plaintiffs' motion to join Thomas & Betts as a defendant, Thomas & Betts argues that it should not be liable for liquidated damages.  This argument is premature and goes beyond the scope of the motions before the court.  Thomas & Betts's potential liability for liquidated damages is a determination more suited for resolution at the summary judgment stage.

## ORDER

IT IS ORDERED that

1.  The motions for substitution filed by plaintiff Brian Teed, dkt. #88 (case no. 08-cv-303-bbc) and plaintiff Marcus Clay, dkt. #39 (case no. 09-cv-313-bbc), are GRANTED.

20

Thomas & Betts Power Solutions, LLC is SUBSTITUTED for defendants JT Packard &

Associates and S.R. Bray Corp.

    2.   The clerk of court is directed to set a new scheduling conference before the

magistrate judge.

    Entered this 22d day of November, 2010.

                    BY THE COURT:
                    /s/
                    BARBARA B. CRABB
                    District Judge

21