UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BRIAN TEED, on behalf of himself
and all others similarly situated,

        Plaintiff,

08-cv-303-bbc

v.

THOMAS & BETTS POWER SOLUTIONS, LLC
a domestic corporation, *et al.*

        Defendant,

MARCUS CLAY, on behalf of himself
and all others similarly situated,

        Plaintiff,

09-cv-313-bbc

v.

THOMAS & BETTS POWER SOLUTIONS, LLC
adomestic corporation, *et al.*

        Defendant,

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**FACTUAL BACKGROUND**

      JT Packard is a provider for network-critical power equipment and services to customers throughout the country. (PFOF ¶ 1.) JT Packard employs Field Engineers who perform preventative maintenance and emergency services for JT Packard's customers at various site locations throughout their assigned territories and occasionally in other territories throughout the country. (PFOF ¶ 2.)

JT Packard employment relationships with Plaintiff and all their other employees are subject to the FLSA and JT Packard is an enterprise engaged in commerce. (PFOF ¶¶ 3, 4.) JT Packard's employment relationships with its Field Engineers are subject to the FLSA and the Field Engineers worked in excess of forty hours in various workweeks. (PFOF ¶¶ 5, 6.)

JT Packard's Field Engineers are salaried employees who did not receive overtime premium compensation when they work more than forty hours in a workweek. (PFOF ¶ 7.) Field Engineers learn how to do their job through on the job training and other training programs from various organizations. There are no college courses which teach UPS repair. (PFOF ¶ 8.) The Field Engineers do not have a traditional workplace outside of their homes to which they regularly report, but rather maintain a home office. (PFOF ¶¶ 9-10.) JT Packard provides its Field Engineers with a cell phone and a laptop with access to JT Packard emails and JT Packards intranet. (PFOF ¶ 11, 12.)

JT Packard's field engineers receive scheduled assignments of routine maintenance from customer service account managers by e-mails that they access on their company issued laptops. (PFOF ¶ 13.) JT Packard requires its Field Engineers to perform various duties, (PFOF ¶¶ 15-39) however, JT Packard does not maintain the hours it takes its Field Engineers to perform these tasks. (PFOF ¶¶ 42-56.)

Jurisdiction and venue are not disputed. (PFOF ¶ 61, 62.)

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P.56(c). Rule 56(c) mandates the entry of summary

judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A scintilla of evidence in support of the non-moving party's position is not sufficient to withstand summary judgment; there must be evidence on which a jury could reasonably find for JT Packard. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). No genuine issue for trial exists where the record as a whole could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, the mere existence of an alleged factual dispute between the parties is not sufficient to defeat a motion for summary judgment. *Spath v. Hayes Wheels Int l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).

## LEGAL ARGUMENT

Plaintiffs seek partial summary judgment on discrete issues related to his FLSA claim on behalf of themselves and the other employees of JT Packard who have opted into this action including: (1) coverage of JT Packard as employers of Plaintiffs as employees employed by JT Packard; (2) record keeping violations; and (3) JT Packard's affirmative defenses. In an effort to streamline cases prior to trial, Plaintiffs request the Court grant partial summary judgment on these discrete issues relating to liability despite the fact that there continues to be a dispute over the extent of hours worked by Plaintiffs and those individuals who have opted into this matter - JT Packard's monetary liability.

I. **Plaintiffs have established a *Prima Facie* case establishing a violation of the FLSA.**

The Fair Labor Standards Act states:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
> 29 U.S.C. § 207(a).

To establish its *prima facie* case, Plaintiffs must demonstrate that: (1) JT Packard employed them; (2) JT Packard is an enterprise engaged in interstate commerce covered by the FLSA; (3) each Plaintiff actually worked in excess of a 40-hour workweek; and (4) JT Packard did not pay any overtime wages to them. *See Morgan v. Family Dollar Stores*, 551 F.3d 1233, n. 68 1277 (11th Cir. 2008). Once the employee establishes a *prima facie* case, the burden shifts to the employer to prove its affirmative defenses, if properly plead, which normally consist of exemptions from the FLSA's coverage.

It is not disputed that JT Packard employed its Field Engineers, that JT Packard was an enterprise engaged in commerce, and that JT Packard's Field Engineers were engaged in commerce. (PFOF ¶¶ 3, 4.) In fact, JT Packard admits in its answer that its employment relationships with all its employees are subject to the FLSA. (PFOF ¶ 5.) Moreover, JT Packard's employees worked in excess of forty hours in various workweeks. (PFOF ¶ 6.). Despite working in excess of forty hours in these workweeks, JT Packard did not pay its Field Engineers overtime premium compensation, as required by 29 U.S.C. § 207. (PFOF ¶ 7.)

Therefore, Plaintiff and the opt-ins have established their *prima facie* case that they are entitled to overtime compensation.  As Plaintiffs have established their *prima facie* case, the burden now squarely shifts to JT Packard to establish an affirmative defense to liability by showing either that its employees are exempt from the FLSA's overtime requirements or any other statutory or common law affirmative defense pled by JT Packard are appropriate.  *Corning Glass Works v. Brennan*, 417 U.S. 188 (1974); *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388 (1960), reh. den., 362 U.S. 945 (1960) (employer must establish that the employees fit "plainly and unmistakably within [the exemption's] terms").

**II.     Summary judgment should be granted to Plaintiffs on JT Packard's pled affirmative and other defenses.**

    **A.  Exemptions from overtime compensation**

JT Packard pled an affirmative defense that its Field Engineers are exempt from the FLSA's requirement that employees receive overtime compensation.  Affirmative Defenses ¶ 1 (Dkt. 15).  In discovery, JT Packard expanded by explaining it claimed the Field Engineers were exempt under either the Professional or Motor Carrier Act exemptions.  Def.'s Answer to Pl.'s First Interrogs. ¶ 9[1].  Not only does the professional exemption not apply to Plaintiffs, the Motor Carrier Act exemption no longer applies due to a change in the Motor Carrier Acts' applicability to Plaintiffs.

    **i.  JT Packard's Field Engineers do not fall within the professional exemption.**

The FLSA exempts certain learned professionals.  29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.301.  To qualify for this exemption, "an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by

---

[1] Defendant's Responses to Plaintiff's First Set of Admissions are attached as Exhibit B to the Declaration of Larry A. Johnson filed contemporaneously with this document.

a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a). The requirement of a prolonged course of specialized instruction looks for "possession of the appropriate academic degree" as a prerequisite for entering into a field of work. 29 C.F.R. § 541.301(d). More importantly, "[t]he learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction." Id.

There is no academic degree that is a prerequisite for entering into the field of UPS service. As JT Packard's current Director of North American Service Operations explained, JT Packard Field Engineers learn how to do their job through on the job training and other training programs from various organizations. (PFOF ¶¶ 8, 59.) There are no college courses which teach UPS service and repair. (PFOF ¶ 8.) Because the most basic elements of the professional exemption cannot be established by JT Packard, it cannot carry its burden and summary judgment in favor of Plaintiffs is appropriate.

        ii. **The Motor Carrier Act exemption acts only as a limitation to the damages available to the Field Engineers.**

Section 213(b)(1) of the FLSA provides a further exemption for certain employees covered by the Motor Carrier Act. However, the Safe, Accountable, Flexible, Efficient Transportation Equity Act ("SAFETEA-LU") was enacted on August 10, 2005 changing the definition of motor carrier and thereby changing the FLSA exemption. It is now quite clear that the Motor Carrier Act exemption applies only to employees who drive vehicles with a gross vehicle weight in excess of 10,001 pounds. See 49 U.S.C. § 31132(1); Pub. L. No. 110-244, 122 Stat. 1572 (2008). JT Packard's Field Engineers have not and do not drive vehicles weighing in excess of 10,001 pounds and are therefore not exempt under the Motor Carrier Act as alleged

since August 10, 2005.  Therefore, the only extent that the Motor Carrier Act exemption plays in this matter is to the time period in which the Field Engineers can recover damages.[2]

As the Motor Carrier Act exemption, in light of SAFETEA-LU, would only affect the amount of damages because of the change in the beginning of the statutory damages period, summary judgment is appropriate on liability in this matter.  In this case it is clear that summary judgment is warranted because the Plaintiffs drove vehicles less than the weight required for the Motor Carrier Act exemption.  (PFOF ¶ 40.)  The Court should find that Plaintiffs were not exempt from the FLSA overtime requirements from August 10, 2005 (or August 9, 2006) and are therefore entitled to overtime premium compensation from JT Packard when they worked in excess of forty hours since that date.

### B. JT Packard's other alleged exemptions and affirmative defenses also fail.

In addition to the two exemptions above, JT Packard pled various other defenses which should also be disposed of by the Court at this time.

#### i. JT Packard has failed to establish its Good Faith defense under 29 U.S.C. § 259.

JT Packard has pled the affirmative defense that Plaintiff's claims are barred by the Good Faith defense contained in Section 10 of the Portal-to-Portal Act, 29 U.S.C. § 259.  Def.'s Affirmative and Other Defenses ¶ 7 (Dkt. 111); Def.'s Affirmative Defenses ¶ 2 (Dkt. 15).  Specifically, the Portal-to-Portal Act states that:

> no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act … if he pleads and proves that the act or omission complained of was in

---

[2] It is disputed whether or not the SAFETEA-LU Technical Corrections Act is applicable in this matter which would, in effect, limit Plaintiffs recovery period by one year changing the start date of any damage calculation from August 10, 2005 to August 9, 2006.  The SAFETEA-LU Technical Corrections Act provided offending employers with a one year safe harbor if it met certain requirements.

> good faith in conformity with and in reliance on any written
> administrative regulation, order, ruling, approval, or interpretation,
> of the [Administrator of the Wage and Hour Division of the
> Department of Labor [Secretary of Labor]], or any administrative
> practice or enforcement policy of such agency with respect to the
> class of employers to which he belonged.

JT Packard did not rely upon any ruling, regulation, interpretation or decision of any kind issued, promulgated or drafted by the DOL. (PFOF ¶¶ 57, 58.) Plaintiff propounded certain written discovery upon JT Packard in October 2008, and received responses in November 2008 which wholly failed to identify facts regarding JT Packard's affirmative defense that it did so rely on a ruling, regulation, interpretation or decision of the DOL. (PFOF ¶¶ 57, 58.) As JT Packard has not supplemented these responses since November 2008, and the responses establish that JT Packard did not so rely on a ruling, regulation, interpretation or decision of the DOL, summary judgment on this affirmative defense is appropriate.

### ii. JT Packard has failed to establish its Good Faith defense under 29 U.S.C. § 260.

Section 11 of the Portal-to-Portal Act, 29 U.S.C. §260, provides employers with a defense to the award of liquidated damages. JT Packard has alleged that this affirmative defense is applicable. Def.'s. Affirmative and Other Defenses ¶¶ 2, 3, 6, 8 (Dkt. 111); Def.'s Affirmative Defenses ¶ 2 (Dkt. 15). Unless a proper defense is presented by JT Packard on this issue, the award of liquidated damages is mandatory. *See Walton v. United Consumers Club*, 786 F.2d 303, 310 (7$^{th}$Cir. 1986) ("Doubling is not some disfavored 'penalty'…Double damages are the norm, single damages the exception, the burden on the employer."). It is abundantly clear that the burden to establish this affirmative defense is on JT Packard and in order to reap the benefit of the defense JT Packard must prove that: (1) its failure to pay overtime wages was in good faith; and (2) it had reasonable grounds for believing that its failure to pay overtime did not

violate the FLSA.29 U.S.C. §260. If, JT Packard, "does not show to the satisfaction of the court that [it] has met the two conditions mentioned above, the court is given no discretion by the statute, and it continues to be the duty of the court to award liquidated damages." 29 C.F.R. §790.22.

In addition to the actual elements of § 260 discussed in section 1. below, JT Packard raised a new claim in opposition to liquidated damages in its brief in response to Plaintiff's Motion to Substitute. *See* Dkt. 94 at p. 41.This will be discussed in section 2. below.

### 1. JT Packard has not established the elements of Good Faith Under § 260.

#### a. JT Packard has not established it had subjective good faith.

To prove subjective good faith JT Packard must prove that it had an honest intention to ascertain and follow the requirements of the FLSA, which includes a duty to investigate its potential liability under the FLSA. *Dominici v. Board of Education*, 881 F. Supp. 315, 322 (N.D. Ill. 1995). JT Packard simply cannot show that it had the subjective good faith necessary to avail itself of the Section 11 defense. When asked in an interrogatory to state the factual and legal support for its affirmative defenses JT Packard responded,

> It is Defendant's understanding that the initial decision [to not pay overtime] was made by Packard's former management personnel, Jeff Cason and Peter Drumm. At or around that time Packard consulted with legal counsel at Axley Brynelson. When Bray purchased Packard in 2006, Packard's then management represented that the field engineers were not entitled to separate overtime compensation and were being lawfully compensated. Bray relied on that representation and was unaware of any reason to further examine whether Packard's compensation system complied with the FLSA until Plaintiff filed this lawsuit. (PFOF ¶ 60.)

In other words, the only attempt to investigate potential liability under the FLSA when Bray purchased JT Packard, was Bray speaking to previous members of management who told them the Plaintiffs are not entitled to overtime.

JT Packard will likely argue that the previous management's alleged conversation with counsel is sufficient to satisfy the investigation requirement of the Section 11 defense. However, in an analogous situation, a subsidiary employer was not allowed to use the investigation of its parent corporation to show that it had sufficiently investigated its potential liability under the FLSA. *Baker v. GTE North, Inc.*, 927 F. Supp. 1104, 1118 (N.D. Ind. 1996) (rev'd on other grounds 110 F.3d 28 (7th Cir. 1997)) In *Baker* the parent corporation's counsel had given an opinion regarding the likelihood of an FLSA violation based on a certain program that the parent corporation was implementing. The subsidiary corporation followed the recommendation of the parent corporation to implement the program, but did no independent investigation of its own to determine the potential for FLSA liability and was unaware of the contents of the counsel's opinion. *See Id.*

This case presents a very similar factual situation as JT Packard relied upon the previous management's representation, without seeing the opinion from Axley Brynelson, or performing any other investigation into the potential for FLSA liability. Based on the utter lack of investigation, it cannot be held that JT Packard subjectively acted in good faith with regards to Plaintiffs' entitlement to overtime under the law and therefore the Court should find that JT Packard cannot carry the burden on its affirmative defense as a matter of law.

### b. JT Packard has not established it had objective good faith.

Generally an employer can satisfy the "reasonable grounds" element of the Section 11 only if it relied upon a reasonable, albeit erroneous interpretation of the FLSA and its accompanying regulations as, "a good heart but an empty head does not produce a defense." *Walton*, at 312. In this case, JT Packard relied on nothing other than a representation from previous management that the practices were in compliance. JT Packard did not consult a lawyer of its own; nor did it seek any clarification from the U.S. Department of Labor; nor did it attend any seminars, read books or articles about the FLSA; nor did it look at the regulations or law itself to make its own determination as to whether it was in compliance. (PFOF ¶ 60.) As the *Walton* court held, when evaluating objective reasonableness, "the right standard is the one in the statute: whether the employer's conduct -- objectively viewed through the lens of the "reasonable man" famous in tort law -- acted "in good faith and . . . had reasonable grounds for believing that his act or omission was not a violation" of the FLSA." *Id*. (internal citations omitted)

A reasonable employer would not simply rely on a statement from previous management regarding a lawyer's alleged opinion that it had never seen. Instead a reasonable employer would take some action to find out for itself if it was in compliance with the FLSA. Whether it was researching the law in some way, seeking out an opinion from a lawyer or the Department of Labor, or even contacting the lawyer from Axley Brynelson to view his alleged opinion on the subject – rather, JT Packard took no affirmative steps of its own to investigate FLSA compliance. Although JT Packard may have had a "good heart" in its failure to pay overtime, it seems to have had an "empty head" and thus cannot avail itself of the Section 11 defense.

### 2. Successor liability does not shield an employer from double damages provided by statute.

As raised in its brief in opposition to Plaintiff's Motion to Substitute, JT Packard will likely claim that because it has been brought in under the doctrine of successor liability, it should not be held liable for liquidated damages. See Dkt. 94 at p. 41. Not only is such a claim squarely at odds with the statutory language, this argument is not supported by any case law on point, nor do the cases cited by JT Packard in its brief support its argument for such a finding.

First, under the FLSA, an employer who violates the FLSA's overtime provisions, "shall be liable to the employee or employees affected in that amount of their … unpaid overtime compensation, … and in an additional equal amount as liquidated damages." 29 U.S.C. 216(b). In using the word shall, the legislature did not leave much room for any variation from the provision of liquidated damages. Moreover, nowhere does being held liable under the successor liability doctrine fit into the objective and subjective construct of the § 260 "good faith" defense. That is, liability under the successor liability doctrine does not meet JT Packard's burden that (1) its failure to pay overtime wages was in good faith; and (2) it had reasonable grounds for believing that its failure to pay overtime did not violate the FLSA. 29 U.S.C. §260.

Second, there is no case law that provides an employer, under successor liability, relief from liquidated damages. When an employer violates the FLSA, an award of liquidated damages is the rule, not the exception. See *Walton v. United Consumers Club*, 786 F.2d 303, 310 (7thCir.1986).

Third, JT Packard's argues that it is an innocent purchaser and therefore punitive damages are not appropriate as JT Packard is being held liable under the successor liability doctrine. See *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 749 (7th Cir. 1985). However, FLSA

liquidated damages for failure to pay overtime wages are ***compensation***, not a penalty or punishment. *Overnight Motor Transp. Co. v. Miss*el, 316 U.S. 572, 583 (1942) (citations omitted). Liquidated damages "constitute [] compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *BrooklySav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945); *see also Walton* at 310 ("Doubling [damages under the FLSA] is not some disfavored 'penalty.' [The Portal-to-Portal Act] made doubling discretionary rather than mandatory, but it left a strong presumption in favor of doubling. . . ."). The Supreme Court has further explained that liquidated damages are intended to compensate employees for the delay in recovery of unlawfully withheld wages. *Brooklyn Sav.Bank,* 324 U.S. at 715. The double damages under the FLSA are awarded to make the employee whole because of the employee's inability to utilize the compensation when it was due. Therefore, regardless of successor liability, liquidated damages in an amount equal to overtime wages are necessary to fulfill the policy purposes of 29 U.S.C. § 216(b). *See BrooklynSav. Bank*, 324 U.S. at 707 ("[The liquidated damages provision in the FLSA] constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency, and general well-being of workers' [] and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being.").

Recognizing that a failure to pay overtime premiums causes damages beyond what a simple backpay could remedy, the Supreme Court explained that "reparations to restore damage done by such failure to pay on time must be made to accomplish Congressional purposes." *Brooklyn Sav. Bank v. O'Neil*, 325 U.S. 893, 902 (1945). In other words, rather than litigating

the particular damages each employee has suffered from the delayed payment of wages, the statute simply authorizes an award of liquidated damages to make the employees whole.

That Thomas & Betts now stands in the shoes of JT Packard under the doctrine of successor liability, and is operating as JT Packard, does not insulate JT Packard from liquidated damages which are required under the FLSA. Double damages are not punitive in nature - they exist to make the plaintiffs whole, not to punish a wrong doer. Because the liquidated damages provided for by the FLSA are not punitive in nature, the case law cited by JT Packard and the reasoning of those courts are not similar to the matter at hand.

### iii. JT Packard's claim that it is not an employer has already been resolved by this Court.

JT Packard in its Amended Answer and Affirmative and Other Defenses (Dkt. 111) alleges that JT Packard "is not properly considered Plaintiffs' "employer" under applicable laws, nor is it the successor of Plaintiffs' employer." Def.'s Affirmative and Other Defenses, ¶ 4 (Dkt. 111). Not only does JT Packard's answer admit that JT Packard is an employer of the Field Engineers, this Court has already granted Plaintiff's Motion on Substitution which found that the federal successorship doctrine is applicable to FLSA cases and that Plaintiffs have satisfied the elements of said doctrine. (Dkt. 103.) Therefore, Plaintiffs respectfully request the Court grant partial summary judgment on JT Packard affirmative defense that it is not an employer. *See* Def.'s Affirmative and Other Defenses ¶ 4, (Dkt. 111).

### iv. JT Packard's mitigation defense fails as there is no such duty under the FLSA.

Plaintiffs should be granted summary judgment as to JT Packard's affirmative defense suggesting that Plaintiffs have failed to mitigate damages. The law on this issue is simple and quite clear. There is no duty to mitigate damages of an FLSA claim. *Lopez v. Autoserve LLC*,

No. 05 C 3554, 2005 U.S. Dist. LEXIS 29161 at *5 (N.D. Ill.Nov. 17, 2005). For that reason, the affirmative defense of failure to mitigate has no place in this action and Plaintiffs must be granted summary judgment.

### v. JT Packard's estoppel defense must also fail.

JT Packard knew that Plaintiffs were performing work that was a principal activity (or integral and indispensable to Plaintiffs' principal activities) and was not recorded on their field service reports because there was no place on the field service reports for Plaintiffs to record that time. (PFOF ¶¶ 42-55.) Because it was aware of the work that was being performed, JT Packard cannot successfully assert a defense of estoppel. *See Wirtz v. Carolina Co.*, 255 F. Supp. 417, 424 (M.D.N.C. 1966) ("defendants cannot be relieved of their statutory obligation [to make, keep and preserve an accurate record of the hours worked per day and per week] by relying upon the information recorded in the handbooks, particularly when they knew, or had reason to believe, the information was inaccurate.")

Therefore, Plaintiffs are entitled to partial summary judgment on JT Packard's other alleged defenses including: Good Faith under 29 U.S.C. § 259; Good Faith under 29 U.S.C. § 260; that Defendant is not an employer; Mitigation; and Estoppel.

### III. Because JT Packard's records are insufficient, Plaintiffs are entitled to benefit from certain inferences permitted by law at trial.

Once an employee establishes *prima facie* violation of the FLSA, the employee "must establish damages, and that the task is not a difficult one where the employer has kept time records in compliance with the requirements of the FLSA." *Brown v. Family Dollar Stores of Ind., LP*, 534 F.3d 593, 595 (7th Cir. 2008). However, there is "a different standard that [applies] where the employer's records [do] not provide that accurate record of time worked." *Id*. In *Brown*, the Seventh Circuit reiterated the holding in *Anderson v. Mt. Clemens Pottery Co.*, 328

U.S. 680, 688 (U.S. 1946) that "where an employer failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee should bear the consequences of that failure." *Id*. The Seventh Circuit explained the burden in such a case:

> [i]n such a situation, . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference … [t]he burden then would shift to the employer to produce evidence of the precise amount of work performed or to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to meet that burden, a court may award damages even though they are approximations.
> *Id*. (internal citations to *Anderson* and quotations omitted)

Section 211 of the FLSA provides that every employer must keep certain records. 29 U.S.C. § 211. Specifically, 29 C.F.R. § 616 explains which records must be maintained by employers like JT Packard and it specifically includes the requirement that the number of hours each employee works each workday be recorded and maintained. 29 C.F.R. § 516.2(a)(7).

Despite the FLSA's requirement to maintain the actual number of hours its Field Engineers worked each workday, JT Packard failed to do so. JT Packard's only record of the hours worked by Field Engineers prior to the time JT Packard began paying overtime, is the time recorded in the Field Service Reports ("FSR") filled out by Plaintiffs. (PFOF ¶ 45.) JT Packard's own policy regarding the FSR is that Plaintiffs (and other Field Engineers) only record the time it takes to travel to the customer location, the time spent at the customer location, and the time it takes to travel back from the customer location. (PFOF ¶¶ 42-44.) The FSRs fail to include many tasks JT Packard requires its Field Engineers to perform including:

- The time a Field Engineer spends checking his email; (PFOF ¶¶ 13, 16-20, 31, 38, 48, 54.)

- The time a Field Engineer spends checking his schedule; (PFOF ¶¶ 15, 17, 18, 24, 49.)

- The time a Field Engineer spends on the phone with their scheduler; (PFOF ¶¶ 21, 22, 25, 27-28, 49.)

- The time a Field Engineer spends on the phone with other Field Engineers providing tech support; (PFOF ¶¶ 21-23, 25, 27-28, 50.)

- The time a Field Engineer spends on the phone with their regional manager; (PFOF ¶¶ 21, 22, 27-28, 36, 51.)

- The time a Field Engineer spends contacting a customer forty-eight hours prior to traveling to that customers location; (PFOF ¶¶ 37, 52.)

- The time a Field Engineer spends preparing for a customer visit including the time that Field Engineers spends familiarizing himself with the specific piece of equipment he will be working on at that customer location; (PFOF ¶¶ 39, 55.)

- The time it takes for Field Engineers to maintain their tools; (PFOF ¶¶ 33, 46.)

- The time it takes for Field Engineers to obtain batteries from the hardware store; (PFOF ¶¶ 34, 46.)

- The time it takes for Field Engineers to obtain various fuses for their work; (PFOF ¶¶ 35, 46.)

- The time it takes a Field Engineer to fill out the FSR if he did not complete it on the customer location; (PFOF ¶¶ 29, 30, 47, 48.)

- The time it takes a Field Engineer to fill up his car with gas. (PFOF ¶¶ 48.)

As the FSRs were maintained for the benefit of JT Packard's customers, more than anyone else's, (PFOF ¶ 56) and the FSRs fail to record all the time Field Engineers worked, they cannot now be used by JT Packard to meet its record keeping requirements under the FLSA. Therefore, Plaintiffs are entitled to prove their damages utilizing the *Anderson* just and reasonable inference standard which Defendants can only rebut with evidence of the precise amount of work performed or by negating the reasonableness of the inference to be drawn from the employee's evidence. *See Brown*, 534 F.3d at 595.

## CONCLUSION

For the reasons articulated herein, Plaintiffs should be granted partial summary judgment. First, Plaintiffs established a *prima facie* case that they are entitled to the protections of the FLSA and were not paid overtime compensation. Second, JT Packard's two statutory exemptions do not shield them from FLSA liability as Plaintiffs were not learned professionals and the Motor Carrier Act no longer covers Plaintiffs since SAFTEA-LU was enacted. Third, JT Packard's other defenses similarly fail including its claimed good faith under the Portal-to-Portal Act, that it is not an employer of Plaintiffs, mitigation and estoppel. Fourth, JT Packard's records of Plaintiffs hours of work are insufficient and therefore Plaintiffs are entitled to the *Anderson* just and reasonable inference standard and increased burden on JT Packard.

Respectfully submitted this 1st day of August, 2011.

**CROSS LAW FIRM, S.C.**
*Attorneys for Plaintiffs*

**s/LARRY JOHNSON**
Larry A. Johnson
ljohnson@crosslawfirm.com
Noah Reinstein
nreinstein@crosslawfirm.com
Nola J. Hitchcock Cross
njhcross@crosslawfirm.com
The Lawyers Building
845 N. 11th Street
Milwaukee, WI 53233
414-224-0000