UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Brian Teed and Marcus Clay, on behalf of themselves and all others similarly situated,

            Plaintiffs,

vs.

Thomas & Betts Power Solutions, LLC,

            Defendant.

Case No. 08-cv-303-bcc

**OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Defendant Thomas & Betts Power Solutions, LLC ("TBPS") submits the following opposing to Plaintiffs' motion for partial summary judgment [dkt #61].

## INTRODUCTION

Plaintiffs' motion for "partial summary judgment" inappropriately attempts to resolve issues that are incapable of resolution at this stage of these proceedings because material facts are in dispute or because the issues themselves do not warrant summary adjudication. For example, Plaintiffs seek summary determination that they are entitled to certain "inferences" at trial regarding their hours worked, without offering a scintilla of affirmative evidence on the subject. Federal Rule 56 is a not a proper vehicle for imposing "inferences," and Plaintiffs have not offered the Court a sufficient record on which to base such inferences. Despite the fact that they have not alleged a violation of the FLSA's record-keeping requirements, they argue that Old JT Packard, TBPS's predecessor, failed to maintain accurate records of hours worked by field engineers – based solely on their allegations concerning Field Service Reports (FSRs) - and thus

TBPS bears the burden of *disproving* Plaintiffs' allegations concerning the hours they worked. Apart from the procedural impropriety of raising such an argument under Rule 56, there are material factual disputes concerning these allegations. First, there are genuine factual issues regarding whether and how often FSRs captured all hours worked, and if they did not, why Plaintiffs failed to record all their working time. Second, there are other time recording methods, such as the FieldPlus system, that undisputedly offered Plaintiffs the opportunity to record time entries for activities they now claim were unrecorded. This begs the question of Plaintiffs' own responsibility in the event a trier of fact finds certain hours were not properly recorded. There are also genuine factual issues regarding whether, despite not having a separate line-item in the FSR form, the tasks Plaintiffs allege were unrecorded were, in fact, recorded under different headings on the FSR.

Plaintiffs further seek "summary judgment" on a *prima facie* violation of the FLSA by Old JT Packard, even though they fail to offer any specific evidence that they ever worked overtime hours and, if so, whether they did so within the relevant limitations period. There is a genuine issue of fact regarding whether Plaintiffs ever actually worked in excess of 40 hours in a given week and if so, when, how often, and whether they were properly compensated. While Defendants concede there are no applicable exemptions (with the exception of the SAFETEA-LU Technical Corrections Act Safe Harbor period – a point even Plaintiffs acknowledge is "disputed"), it is premature to issue a ruling that Plaintiffs have proven anything regarding hours worked during the relevant limitations period.

Lastly, there are genuine issues of fact which preclude the Court, as a matter of law, from imposing liquidated damages at this juncture, and barring TBPS -- an admittedly innocent successor -- from raising a good faith defense under 29 U.S.C. § 260. It would be highly inequitable to impose liquidated damages on TBPS when it had nothing to do with any of the alleged unlawful pay practices and where, to the contrary, the evidence shows it always paid field engineers properly under the FLSA.

## LEGAL ARGUMENT

### I. PLAINTIFFS HAVE NOT ESTABLISHED A *PRIMA FACIE* VIOLATION OF THE FLSA

Plaintiffs concede in their brief "that there continues to be a dispute over the extent of hours worked by Plaintiffs and those individuals who have opted in to this matter" [Ptfs. Brf., p. 3], yet they argue that this court should summarily determine, in the absence of *any* actual evidence regarding the hours they worked, that they have established a *prima facie* case for unpaid overtime. While it is indeed undisputed that TBPS's predecessor Old JT Packard classified field engineers as non-exempt, and that Old JT Packard and the field engineers were covered under the FLSA, there is no basis to grant "summary judgment" on issues relating to damages in this case, or liability for that matter, since there has been no sufficient proof regarding hours worked. Plaintiffs are required to establish that *they* actually worked in excess of 40 hours, within the applicable limitations period, and that they were not properly compensated. Plaintiffs' conclusory assertions, which are based on the threadbare statement "JT Packard Field Engineers worked in excess of forty hours in various workweeks" (SOF ¶ 6) are an

insufficient basis for granting their motion.[1] Genuine factual questions remain regarding whether *Plaintiffs* actually worked those hours and whether they worked such hours in a time period covered by this lawsuit. Def's Addt'l Facts ¶ 13. For example, an opt-in plaintiff could have worked in excess of 40 hours in a workweek outside the limitations period, or, within the SAFETEA-LU Technical Corrections Act "safe harbor" period, in which case they would not have established a *prima facie* violation of the FLSA. The Court should deny Plaintiffs' motion with respect to their *prima facie* case.

## II. SUMMARY JUDGMENT WITH RESPECT TO THE SAFETEA-LU TECHNICAL CORRECTIONS ACT'S EFFECT ON THE LIABILITY PERIOD IS INAPPROPRIATE

Plaintiffs further concede "it is disputed whether or not the SAFETEA-LU Technical Corrections Act is applicable in this matter." Ptfs. Br., p. 7 n.2. This concession is fatal to any assertion that summary judgment on the issue is appropriate. However, on the very same page, Plaintiffs ask this court for a determination that "Plaintiffs were not exempt from the FLSA overtime requirements from August 10, 2005 (or August 9, 2006)[.]" As noted, Plaintiffs' motion presents an inadequate record with which to make a determination as to liability, *i.e.*, whether any field engineers actually worked any hours in excess of 40 during the relevant time period. Defendant concedes the Motor Carrier Act was inapplicable after the Technical Corrections Act was enacted in June of 2008, but asserts that it is entitled to the one-year "safe harbor" offered by the act because its predecessor, Old JT Packard had no actual knowledge regarding any

---

[1] Plaintiffs seek summary judgment on exemption defenses, including the professional exemption, which TBPS never raised.

4

changes to the Motor Carrier Act effectuated by SAFETEA-LU.

### A. Background Behind SAFETEA-LU and Technical Corrections Act

Effective August 10, 2005, Congress through the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy of Users ("SAFETEA-LU"), amended the definition of "motor carrier" in 49 U.S.C. § 13102 by striking the phrase "motor vehicle" from the definition and inserting the phrase "commercial motor vehicle (as defined in section 31132)." Pub. L. No. 109-59, §4142(a), 119 Stat. 1728 (2005) (codified as amended at 49 U.S.C. § 13102(14)). As a result, the definition of "motor carrier" in § 13102, after August 10, 2005, read as follows: "The term 'motor carrier' means a person providing commercial motor vehicle (as defined in section 31132) transportation for compensation." 49 U.S.C. § 13102(14). Section 31132 defines a "commercial motor vehicle," inter alia, as a: "self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater." 49 U.S.C. § 31132(1). After the passage of SAFETEA-LU, many employees who were previously exemption under the prior definition of "motor carrier" (i.e., those employees who drive vehicles weighing less than 10,000 pounds) lost their exempt status because they did not operate "commercial motor vehicles." *See, e.g., Musarra v. Digital Dish, Inc.*, 454 F. Supp.2d 692, 701 n. 19 (S.D. Ohio 2006).

On June 6, 2008, however, Congress enacted the SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, 122 Stat. 1572 (2008) ("TCA") which, for purposes of this case, modified existing law concerning motor carriers in one significant

5

respect: the TCA restored the definition of "motor carrier" in § 13102 by striking the phrase "commercial motor vehicle (as defined in section 31132)" and inserting the phrase "motor vehicle." Pub. L. No. 110-244, § 305(c), 122 Stat. 1620 (2008). Effectively, this provision of the TCA restored the MCA exemption back to its original scope before the enactment of SAFETEA-LU. That is, the MCA exemption could apply to "motor carriers" whose employees drove vehicles of less than 10,000 pounds. Id. The TCA had a "safe harbor," however, in that it provided that an employer shall not be liable under the FLSA if a violation of SAFETEA-LU occurred in the one-year period beginning August 10, 2005, if the employer did not have actual knowledge that the employer was subject to its requirements with respect to the covered employee. SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, § 306, 122. Stat. 1572, 1620 (2008); *Pettit v. Prof'l Transp., Inc.*, 2010 U.S. Dist. LEXIS 87940 (S.D. Ind. August 25, 2010) (determining that liability period ran from August 10, 2006 in the absence of defendant's actual knowledge of SAFETEA-LU impact on Motor Carrier Exemption).

Plaintiffs has offered no evidence that Old JT Packard had actual knowledge that field service engineers were subject to the requirements of SAFETEA-LU and indeed, no one responsible for compensation decisions at Old JT Packard actually knew about SAFETEA-LU or was aware of its impact on the MCA. Def's Addt'l Facts ¶ 16. As such, Defendant is entitled to the safe harbor defense, and Plaintiffs' motion should be denied to the extent premised on the non-application of the SAFETEA-LU safe harbor.

## III. PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON TBPS' GOOD FAITH DEFENSE ON LIQUIDATED DAMAGES

### A. As a matter of Equity, it Would be Unfair to Impose Liquidated Damages on TBPS, an Innocent Purchaser

Although the Court granted Plaintiffs' Motion to Substitute under Rule 25(c) over TBPS's objection, that does not change the fact that Plaintiffs' seek liquidated damages against an entity they admit: (1) did not make the decisions they challenge; (2) never failed to pay them overtime compensation. Simply put, it would inequitable to penalize TBPS for decisions it did not make, and egregiously so when the evidence shows that it always compensated its own field service engineers properly under the FLSA. At the very least, there are fact questions with respect to Old JT Packard's behavior under the FLSA, and TBPS is entitled to a trial before it may be penalized in such fashion as Plaintiffs seek.

It is undisputed that the decision to classify field service engineers as exempt from the FLSA's overtime requirements was made by a management team two levels removed from the one in place when TBPS purchased JT Packard's assets. Def's Addt'l Facts ¶¶ 14-15; Def's Answer to Pl's First Interrogatories No. 9. That management team, including former Old JT Packard owner Jeffrey Cason, consulted with counsel in determining the propriety of the FLSA classification of Field Service Engineers. *Id.* When Cason sold the stock of Old JT Packard to former owners Steve Bray and Keith Bjelajac, they, in turn, relied upon Cason's representations that Field Service Engineers were properly compensated. Def's Answer to Pl's First Interrogatories No. 9. After S.R. Bray was forced into involuntary bankruptcy and Old JT Packard was placed into

7

receivership, the Board of Directors of JT Packard changed the classification of Field Service Engineers from exempt to non-exempt in September of 2009. Def's Addt'l Facts ¶ 17. TBPS, for its part, had always classified its Field Service Engineers as non-exempt and paid them overtime for hours worked in excess of 40 in a given workweek, and continued that practice after it purchased the assets of Old JT Packard and hired some its Field Service Engineers in January of 2010. Def's Addt'l Facts ¶ 18.

When the Seventh Circuit applies the federal successor doctrine, the court also considers the type of remedies available under the statute at issue that should be appropriately sought against the innocent successor. *See Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, at 749, and at 755 (7th Cir. 1985) (Eschbach, J., concurring). In *Musikiwamba*, the court limited available relief in a § 1981 case to the "make whole" remedies of Title VII. *Id.* If the successor is truly "innocent," having played no part in the decision-making or conduct that forms the basis for the plaintiff's claims, it is utterly unjust to impose penalties or damages that are intended to punish or deter. *See, e.g., Gillespie v. First Interstate Bank of Wisconsin*, 717 F. Supp. 649, 654 (E.D. Wis. 1989) (analyzing this "difficult question," but permitting compensatory and punitive damages under Title VII to be imposed against a successor based upon a finding that the two persons accused of discrimination were retained as employees following the merger of the predecessor and successor corporations). *Cf. EEOC v. Nichols Gas & Oil Co.*, 688 F. Supp. 2d 193, 204 (W.D.N.Y. 2010) (refusing to impose punitive damages against "innocent" asset purchaser for alleged Title VII violation, even though successor hired predecessor's agent accused of discrimination, noting "[t]he Court is aware of only a few reported cases

dealing with the issue of punitive damages in Title VII actions involving successor liability, and all of them indicate that such damages are not appropriate against an innocent successor"). Here, by contrast, there is no such evidence of wrongdoing by anyone associated with TBPS, or that TBPS even hired any of the alleged decision-makers from Old JT Packard's predecessor. As noted above, the facts show the opposite.

Old JT Packard no longer exists as a viable entity, and TBPS is placed in the completely untenable position of attempting to prove the "good faith" of the owners and officers of a company that no longer exists, who have no connection to TBPS, and who have also formed a new company, PowerPlus, with which TBPS is both competing and formerly litigating. As TBPS previously argued in opposition to Plaintiffs' motion to substitute it as a defendant in this wage and hour case, the equities weigh heavily in TBPS's favor. TBPS did not make the compensation decisions that Plaintiffs have challenged as the basis for their wage and hour claims, and it did not benefit from the services that Plaintiffs' provided – for which they now claim they were not properly paid. To the extent liquidated damages are meant at least in part to represent services rendered to the employer but for which it did not compensate its employees, there is no basis to impose such liability on TBPS, for whom Plaintiffs never rendered services that are the subject of these overtime claims.

**B.   Old JT Packard Has Establish A Good Faith Defense to Liquidated Damages**

"Any employer who violates the provisions of [the FLSA] . . . shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation

. . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); *Walton v. United Consumers Club*, 786 F.2d 303, 311-12 (7th Cir. 1986). There is, however, a good faith defense, which gives the court discretion to reduce or deny an award of liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act. " 29 U.S.C. § 260. The employer bears the burden of establishing that both the subjective an objective components of that good faith defense against liquidated damages. *Walton*, 786 F.2d at 311-12. A court may "relieve the employer from liability for liquidated damages if the employer demonstrates that the 'act or omission giving rise to such action was in good faith and that [the employer] had reasonable grounds for believing that [the employer's] act or omission was not a violation of the [FLSA].'" *Chao v. Self Pride, Inc.*, 2005 WL 1400740 (D. Md., June 14, 2005) (citing 29 U.S.C. § 260).

As a threshold matter, summary judgment regarding liquidated damages is inappropriate because Plaintiffs have not shown the absence of a genuine issue of fact on the question of whether they are owed any overtime compensation. This Court cannot impose a finding relating to liquidated damages without first determining whether and the extent to which Plaintiffs are entitled to unpaid wages. *Morgan v. SpeakEasy, LLC*, 625 F. Supp. 2d 632, 658 (N.D. Ill. 2007) (denying plaintiff's motion for summary judgment on liquidated damages claim where factual questions existed as to whether plaintiff was owed overtime); *Snapp v. Unlimited Concepts, Inc*, 208 F.3d 928, 932 (11th Cir. 2000),

*cert. denied*, 532 U.S. 975 (2001) ("[o]nly a violation of the FLSA results in a right to liquidated damages under the Act."); *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800 (11th Cir. 1991). In the absence of a determination of an FLSA violation, consideration of the issue of liquidated damages is premature.

Issues of fact also exist relative to the good faith defense. Consultation with legal counsel is one way to demonstrate good faith. *Roy v. County of Lexington*, 141 F.3d 533 (4th Cir. 1998); *Featsent v. City of Youngstown*, 70 F.3d 900 (6th Cir. 1995) (liquidated damages not imposed against city represented by attorney because, given the attorney's silence, city entitled to reasonable belief that its agreement did not violate FLSA); *Hill v. J.C. Penny Co., Inc.*, 688 F.2d 370 (5th Cir. 1982) (defendant's reliance on the advice of counsel insulated it from an award of liquidated damages under the FLSA). It is undisputed in this case that Old JT Packard's predecessor consulted with legal counsel regarding the decision to classify field engineers as non-exempt, later represented to Old JT Packard that field engineers were lawfully compensated under the FLSA, and further that Old JT Packard had no reason to re-examine the issue until this Lawsuit. Plaintiff cites *Dominici v. Board of Education* for the proposition that Old JT Packard had a "duty to investigate," but that case is distinguishable because the case did not involve a successor employer, and the facts revealed no investigation into the FLSA's requirements.

Plaintiffs argue that Old JT Packard (and apparently, by extension TBPS), cannot avail itself of the good faith defense because it did not "independently investigate" its predecessor's conclusion that field service engineers were exempt. This is an odd

11

argument, given that Plaintiffs are attempting to hold TBPS responsible for the actions of others. It would be inequitable to hold TBPS responsible for Old JT Packard's compensation practices, yet at the same time preclude it from relying upon any actions taken by it to support a good faith defense. There is no duty in the case of a successor employer to "independently investigate" its predecessor's investigation for purposes of a good faith defense, particularly in a situation where there was no established case law within this Circuit which would have imposed successor liability under the statute. Moreover, in light of the fact that the SAFETEA-LU amendments to the Motor Carrier Act are the intervening event giving rise to potential liability of Old JT Packard in the first instance, and given that no one at Old JT Packard actually knew of the changes in the law, it would be unfair to impose a "duty to investigate the investigation" under the circumstances.

Plaintiffs' citation to *Baker v. GTE North, Inc.*, 927 F. Supp. 1104 (N.D. Ind. 1996) *rev'd on other grounds*, 110 F.3d 28 (7th Cir. 1997) is also inapposite. In *Baker*, a subsidiary employer implemented a home dispatch program created by its parent corporation, and which plaintiffs claimed violated the FLSA. The parent corporation had obtained the opinion of legal counsel as to its legality, but the subsidiary was unaware of the legal opinion, and was further "on notice" that the program potentially violated the FLSA, due to union complaints regarding same. 927 F. Supp. at 1118. Here, by contrast, Old JT Packard <u>was</u> aware of the prior consultation with counsel, as evidenced by its interrogatory responses. Moreover, unlike the defendant in *GTE*, it had no reason to believe its compensation system potentially violated the FLSA. Therefore, *GTE* does not

support Plaintiffs' arguments, and should not preclude TBPS from raising a good faith defense.

## IV. PLAINTIFFS' ARGUMENTS REGARDING CERTAIN "INFERENCES" ARE INAPPROPRIATE FOR RESOLUTION ON SUMMARY JUDGMENT

Plaintiffs' argument (Ptfs. Br. pp. 15-18) regarding certain "inferences" associated with Old JT Packard's alleged insufficient records should be rejected on the record before this Court. First, Plaintiffs have not, nor could they, allege a record-keeping violation under Section 211(c). There is no private cause of action for such statutory violation. *East v. Bullock's Inc.*, 34 F. Supp. 2d 1176, 1182-83 (D. Ariz. 1998) (noting that there is no private right of action to enforce FLSA's record-keeping requirements); *Elwell v. Univ. HosDs. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002) ("[a]uthority to enforce the Act's record-keeping provisions is vested exclusively in the secretary of Labor" and the Secretary of Labor therefore has exclusive authority to seek relief for alleged violations) (citations omitted).)

Instead, they merely assert, in conclusory fashion, that Old JT Packard's records are not "accurate," apparently, reasoning that Field Service Reports and policies associated with completion of such reports did not require that certain time be recorded separately. But as Plaintiffs are forced to concede at the outset of their brief, there is a genuine material dispute regarding the number of hours Plaintiffs worked, and by extension, there are factual questions regarding: (1) whether Plaintiffs followed policies associated with time recording; (2) whether certain tasks Plaintiffs claim are compensable were otherwise performed during periods of time otherwise captured on FSRs; (3)

whether other time-recording systems, such as FieldPlus, accurately recorded field engineers' activities. Def's Addt'l Facts ¶¶ 1-12. In this regard, Plaintiff's premise – that FSR's are the "only record of hours worked by Field Engineers" – is factually incorrect. Def's Addt'l Facts ¶ 10-12. Because of all of these factual disputes, the Court should decline to issue an advisory opinion or a preliminary jury instruction before the close of evidence at trial in this matter.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for summary judgment should be denied.

Dated this 22nd day of August, 2011.

s/ Noah G. Lipschultz<br>
Noah G. Lipschultz  (MN SBN: 0387308)<br>
nlipschultz@littler.com<br>
Andrew J. Voss  (MN SBN: 0241556)<br>
**LITTLER MENDELSON, P.C.**<br>
1300 IDS Center<br>
80 South 8th Street<br>
Minneapolis, MN  55402.2136<br>
Telephone: 612.630.1000<br>
Facsimile:  612.630.9626<br>

**ATTORNEYS FOR DEFENDANTS**

Firmwide:103170367.1 052857.1006