IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRIAN TEED, on behalf of himself
and all others similarly situated,                                OPINION and ORDER

                Plaintiffs,

                                                                                    08-cv-303-bbc

        v.

THOMAS & BETTS POWER SOLUTIONS, LLC,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARCUS CLAY,                                                              OPINION and ORDER

                Plaintiff,

                                                                                     09-cv-313-bbc

        v.

THOMAS & BETTS POWER SOLUTIONS, LLC,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiffs Brian Teed and Marcus Clay filed separate suits against defendants JT Packard & Associates, Inc. and S.R. Bray Corp. under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and state law to recover for unpaid overtime work they performed as field engineers while employed at JT Packard. In their position as field engineers, plaintiffs

1

performed maintenance and emergency services for JT Packard's customers at various site locations. Plaintiffs allege that until 2009, field engineers were considered to be salaried employees and were not paid for their overtime hours.

On October 3, 2008, Teed's case was conditionally certified as a collective action under 29 U.S.C. § 216(b) and several plaintiffs opted in to the case. In an order dated March 9, 2009, I concluded that Teed could proceed as a class representative on behalf of those plaintiffs who had opted in to the FLSA action. Dkt. #55. (Throughout this opinion, I will use docket numbers from the Teed case, 08-cv-303-bbc.) Plaintiff Clay filed his case in May 2009, raising identical claims and allegations as Teed. (The two cases were consolidated on February 8, 2001. Dkt. #110.) In late 2009, defendants filed a motion to dismiss or stay proceedings pending the outcome of a state receivership proceeding; that motion was denied. In 2010, Thomas & Betts purchased the assets of JT Packard & Associates in receivership proceedings and in late 2010, plaintiffs filed a motion to substitute Thomas & Betts as the defendant in this case under Fed. R. Civ. P. 25(c). I granted that motion on November 11, 2010. Dkt. #103.

Now before the court is plaintiffs' motion for partial summary judgment on several issues. Dkt. #112. I conclude that plaintiffs have not shown that summary judgment would be appropriate on many of the issues either because plaintiffs have presented very few facts in support of them, there are material facts in dispute, the issues are not relevant to the case or a decision on the issues would be premature. However, I will grant summary judgment

2

to plaintiffs with respect to defendant's defenses that it does not qualify as plaintiffs' employer, that plaintiffs failed to mitigate their damages and that defendant has a good faith defense under the 29 U.S.C. § 259.

OPINION

Plaintiffs ask the court to find as a matter of law that:

(1) plaintiffs have established a prima facie violation of the FLSA;

(2) plaintiffs do not fall within the FLSA's exemption for professionals, 29 U.S.C. § 213(a)(1);

(3) defendant cannot raise an estoppel defense;

(4) defendant qualifies as plaintiffs' employer under the FLSA;

(5) defendant cannot raise a defense that plaintiffs failed to mitigate their damages;

(6) defendant has failed to establish a good faith defense under the Portal-to-Portal Act, 29 U.S.C. § 259;

(7) the Motor Carrier Act exemption does not apply to plaintiffs;

(8) defendant failed to keep proper records of the time plaintiffs worked; and

(9) defendant does not have a good faith defense to liquidated damages under 29 U.S.C. § 260.

Some of these issues can be resolved with little discussion. With respect to the first issue, plaintiffs have not established a prima facie violation of the FLSA. Under the FLSA,

3

employers must pay overtime rates for hours worked in excess of 40 hours a week. 29 U.S.C. § 207. This means that plaintiffs must prove that they worked more than 40 hours in a workweek and that they were not compensated properly for those extra hours. The record establishes only that some field engineers worked more than 40 hours in a workweek on occasion. In addition, it is undisputed that field engineers performed several tasks that may not have been compensated, including checking email and voicemail, calling customers and managers, providing technical support to other engineers, submitting field service reports, obtaining and maintaining tool and driving to work sites. (Plaintiffs cite mainly defendant's answer in support of these facts and have not submitted evidence from any opt-in plaintiffs regarding their work experiences.) However, plaintiffs have adduced no evidence that any opt-in plaintiffs ever worked overtime hours and if so, whether they did so within the relevant limitations period and whether they were compensated properly for their time. Without such evidence, plaintiffs are not entitled to summary judgment on their FLSA claim.

Plaintiffs are also not entitled to summary judgment on the second issue, defendant's estoppel defense, because there are disputed issues of fact regarding whether plaintiffs complied with defendant's time keeping procedures by recording properly all of the time they worked. Plaintiffs contend that field engineers submitted time reports that did not capture all of their time worked, while defendants contend that there were multiple time keeping procedures that could capture time worked.

4

With respect to the third issue, defendant does not contend that plaintiffs fall under the professional exemption provision of the FLSA and defendant did not assert that defense in its amended answer. Dkt. #59. Because it would be inappropriate to grant summary judgment on an issue that has not been raised in the pleadings, I will deny plaintiffs' motion with respect to this issue.

I will grant plaintiffs' motion on the fourth, fifth and sixth issues. In its amended answer, defendant raised defenses of (1) good faith under 29 U.S.C. § 259; (2) plaintiffs' failure to mitigate damages; and (3) that defendant was not plaintiffs' employer for FLSA purposes. However, defendant now concedes that it qualifies as plaintiffs' employer for purposes of the FLSA. Additionally, it did not respond to plaintiffs' arguments regarding mitigation of damages or good faith under § 259. (Generally, mitigation of damages would be an issue that would be relevant only after plaintiffs establish liability. However, by failing to respond at all to plaintiffs' motion for summary judgment on this issue, defendant has waived the issue mitigation.) Therefore, plaintiffs are entitled to summary judgment on these issues.

Because the remaining issues require more extensive discussion, I will discuss each separately.

## A. Motor Carrier Act Exemption

The overtime provisions of the FLSA do not apply to "any employee with respect to

5

whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). This exemption is known as the motor carrier exemption. Until August 10, 2005, "motor carrier" was defined as a "person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(12) (2004). Thus, employees who drove a motor vehicle as a major part of their employment were considered to be exempt from the overtime provisions of the FLSA. (Plaintiffs do not deny that they drove a motor vehicle as part of their employment. In particular, field engineers were required to drive vehicles to customer work sites.)

Effective August 10, 2005, through the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users, Congress amended the definition of "motor carrier" by inserting the phrase "commercial motor carrier" for "motor carrier." 49 U.S.C. § 13102(14) (2005). Section 31132 defines a "commercial motor vehicle" as vehicles used on highways in interstate commerce, if the vehicle (1) weighs at least 10,001 pounds; (2) transports more than 8 passengers for compensation; (3) transports more than 15 passengers without compensation; or (4) transports hazardous material. 49 U.S.C. § 31132(1). After the 2005 amendment, "many employees who were previously exempt under the prior definition of 'motor carrier' lost their exempt status because they did not operate 'commercial motor vehicles.'" Tews v. Renzenberger, Inc., 592 F. Supp. 2d 1331, 1344 (D. Kan. 2009). It is undisputed that plaintiffs in this case did not operate "commercial motor

6

vehicles" on August 10, 2005, or at any time thereafter. Thus, plaintiffs contend that the court should hold that they were not exempt from the overtime provisions of the FLSA after August 10, 2005. However, defendant contends that it can take advantage of a safe harbor provision in the Technical Corrections Act of 2008 that would allow defendant to treat plaintiffs as exempt until August 9, 2006, rather than August 10, 2005.

In 2008, Congress passed the Technical Corrections Act, restoring the "motor carrier" language in lieu of the "commercial motor vehicle" that had been amended in 2005. Pub. L. 110-244, § 305 (June 6, 2008); 49 U.S.C. § 13102(14)(2008). However, § 306 of the Technical Corrections Act provides that the FLSA "shall apply to a covered employee notwithstanding section 13(b)(1) of that Act (29 U.S.C. § 213(b)(1))." Pub. L 110-224, § 306(a). Covered employees include those that drive vehicles weighing 10,000 pounds or less and are designed or used to transport eight or fewer passengers, including the driver. Id. § 306(c). The net result of this change is that employees who drive vehicles as part of their employment that were once exempt from overtime prior to the passage of Safe, Accountable, Flexible, Efficient Transportation Equity Act, are now eligible for the benefits of overtime compensation by virtue of the fact that they are "covered employees." However, the Technical Corrections Act had a "safe harbor," in that it provided that an employer shall not be liable under the FLSA for violations that occurred in the one-year period beginning August 10, 2005, if the employer did not have knowledge that it was subject to the FLSA's requirements with respect to the covered employee. Id. § 306(b). Miller v. Professional

7

Transportation, Inc., 2010 WL 3398935, *6 (S.D. Ind. Aug. 25, 2010) (determining that liability period ran from August 10, 2006 in absence of defendant's actual knowledge of Safe, Accountable, Flexible, Efficient Transportation Equity Act's impact on motor carrier exemption).

Defendant has offered evidence that no one responsible for compensation decisions knew about the Safe, Accountable, Flexible, Efficient Transportation Equity Act and its impact on the motor carrier exemption; plaintiffs have offered no evidence to the contrary. Moreover, in their brief in support of their motion for summary judgment, plaintiffs concede that "[i]t is disputed whether or not the [safe harbor provision of the] Technical Corrections Act is applicable in this matter . . . ." Plfs.' Br., dkt. #113, at 7, n.2. Because there are factual disputes regarding whether defendant can take advantage of the safe harbor provision, summary judgment on the issue would be inappropriate. It would also be improper to grant summary judgment on the issue whether the motor carrier exemption applied to plaintiffs after August 9, 2006. Although there is no dispute as to this issue, defendants have never argued that the exemption could apply after 2006. It is not necessary or appropriate for the court to grant summary judgment on a defense that defendant has not raised.

### B. Burden of Proof at Trial

Plaintiffs have asked the court to find as a matter of law that defendant's time keeping

records are inaccurate and that as a result, plaintiffs can establish damages by "just and reasonable inference." Plaintiffs cite Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946) in support of their argument. In that case, the Supreme Court stated that plaintiffs in an FLSA action have the "burden of proving that [they] performed work for which [they were] not properly compensated." Id. at 687. The Court added that in some situations, however, it may be impossible for an employee to prove the amount of uncompensated work because the employer's records are "inaccurate or inadequate and the employee cannot offer convincing substitutes." Id. In such a situation, "an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Id. "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id.

Plaintiffs have not established that they are entitled to utilize the burden shifting approach established in Anderson. The rule in Anderson applies after the employee has proved that he is entitled to damages by "prov[ing] that he has performed work and has not been paid in accordance with the statute." Id. In other words, the question whether Anderson applies will arise only if plaintiffs prove that defendant violated the FLSA by failing to compensate them properly for overtime hours. Anderson does not lower or

9

eliminate plaintiffs' burden of proving that they have in fact performed work for which they were improperly compensated. At this stage, plaintiffs have not submitted any evidence of an FLSA violation.

### C. Liquidated Damages

Finally, plaintiffs seek summary judgment on defendant's "good faith" defense, which relates to the possibility that it could pay liquidated damages under 29 U.S.C. § 260. As defendant points out, however, the issue of liability has yet to be decided and many issues remain in dispute, making it particularly difficult to determine whether defendant's position was "objectively reasonable." Walton v. United Consumers Club, Inc., 786 F.2d 303, 312 (7th Cir. 1986) (proper standard involves asking whether employer had objectively reasonable grounds for act or omission). Moreover, defendant has presented evidence that JT Packard relied on the advice of counsel in categorizing field engineers as exempt and their disputed facts regarding counsel's opinion and whether JT Packard's reliance on it was reasonable. In sum, because a decision regarding "good faith" is not yet ripe and there are material issues of fact in dispute, I will deny plaintiffs' motion for summary judgment on this matter.

### ORDER

IT IS ORDERED that the motion for summary judgment filed by Brian Teed, 08-cv-

303-bbc, dkt. #112, and Michael Clay, 09-cv-313-bbc, dkt. #60, is GRANTED IN PART and DENIED IN PART.

Plaintiffs' motion is GRANTED as follows:

a. Defendant has not established a good faith defense under 29 U.S.C. § 259;

b. Defendant has not established that plaintiffs failed to mitigate their damages; and

c. Defendant was plaintiffs' employer for purposes of the FLSA.

Plaintiffs' motion is DENIED in all other respects.

Entered this 1st day of November, 2011.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

11