**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

**BRIAN TEED, on behalf of himself**
  **and all others similarly situated,**

      **Plaintiff,**
                  **08-cv-303-bbc**

**v.**

**THOMAS & BETTS POWER SOLUTIONS, LLC**
  **a domestic corporation, *et al.***

      **Defendant,**

---

**MARCUS CLAY, on behalf of himself**
  **and all others similarly situated,**

      **Plaintiff,**
                  **09-cv-313-bbc**

**v.**

**THOMAS & BETTS POWER SOLUTIONS, LLC**
  **a domestic corporation, *et al.***

      **Defendant,**

---

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DECERTIFY**
**COLLECTIVE ACTION AND DISMISS OPT-IN PLAINTIFFS**

---

## INTRODUCTION

Plaintiffs' case is better suited for collective treatment than piecemeal litigation as to each plaintiff regarding the same policy of JT Packard.  Individualized testimony is not necessary to establish that JT Packard's uniform policy not to pay plaintiffs overtime compensation violated the FLSA.  Not only is there no claimed exemption at issue, JT Packard's own partial time records establish that plaintiffs worked in excess of forty hours a week during at least one workweek of their employment.  Other issues such as whether JT Packard maintained the records required by the FLSA, whether liquidated damages are appropriate in an FLSA case, whether JT

Packard acted in good faith under 29 U.S.C. § 260 and other similar elements of both plaintiffs'

and defendant's cases are better suited for collective treatment – they do not rely on the

testimony of individual plaintiffs.  The variations identified by defendant in the amount of time it

takes individual plaintiffs to perform certain tasks are applicable to damages only – the use of

representative testimony, especially when an employer fails to maintain proper and complete

records of hours worked by plaintiffs is well established by *Anderson v. Mt. Clemens Pottery

Co.*, 328 U.S. 680 (U.S. 1946) and its progeny.  Defendant's motion to decertify this matter is

not only improper and must be denied, it would result in an incredible waste of this Court's

resources and the resources of the parties.  Moreover, it would likely be cost prohibitive for

plaintiffs who have little in the way of damages to pursue their rights which have been violated.

## FACTUAL BACKGROUND

Plaintiffs all worked as Field Engineers[1] for defendant and performed the exact same job

duties as a Field Engineer—preventative and emergency maintenance of Uninterruptable Power

Supplies.[2]  Each Field Engineer worked from a home office[3] and they were provided a laptop

from JT Packard.[4]  Each Field Engineer started his day at home in the same manner by

performing certain tasks prior to leaving for the client's location—checking their e-mails;[5]

---

[1] Chau Dep. 29:10–12, Oct. 11, 2011; Hershey Dep. 9:23–10:9, Oct. 11, 2011; Kerhrmeyer Dep. 9:4, Oct. 24, 2009; Kraft Dep. 16:22–17:4, Nov. 1, 2011; Marcum Dep. 63:14–17, June 6, 2009; Olivas Dep. 13:7–12, Nov. 7, 2011; Perry Dep. 46:15–17, Oct. 14, 2011; Silvers Dep. 26:24–27:4, June 16, 2009; Teed Dep. 35:18–20, Nov. 3, 2011.

[2] Chau Dep. 37:1–7; Clay Dep. 22:7–11, Oct. 24, 2011; Hershey Dep. 33:23–34:14; Kerhrmeyer Dep. 66:19–25; Kraft Dep. 119:12–25; Olivas Dep. 65:24–66:3; Perry Dep. 50:21–25, 118:9–17; Silvers Dep. 97:1–98:19; Teed Dep. 71:2–11, 98:23–99:2.

[3] Clay Dep. 33:4–6; Hershey Dep. 16:21; Kerhrmeyer Dep. 31:11–14; Kraft Dep. 5:11–13; Marcum Dep. 77:22–23; Olivas Dep. 49:11–12; Perry Dep. 16:3–5; Silvers Dep. 38:17–19.

[4] Chau Dep. 33:12–15; Hershey Dep. 16:20; Kraft Dep. 65:18–22; Olivas Dep. 51:25–52:3.

[5] Chau Dep. 33:6–11; Clay Dep. 78:18–23; Hershey Dep. 30:17–21; Kerhrmeyer Dep. 33:4–9; Kraft Dep. 58:3–10; Marcum Dep. 65:21–25; Olivas Dep. 51:13–14; Perry Dep. 49:2–6; Silvers Dep. 37:7–10; Teed Dep. 74:16–75:1.

checking their schedule;[6] confirming any appointments for the day, including calling people, if needed;[7] and loading their tools, equipment, and laptop into their car.[8]  At the end of the day, Field Engineers return home, unload their tools, equipment and laptop from their vehicles,[9] and finish any outstanding paperwork.[10]

Pursuant to JT Packard's policies, the field service report only includes the time that a Field Engineer spends driving to and from a client location and the time the Field Engineer spends at the client location.[11]  All of the other administrative time that Field Engineers spent working was not reported on the field service reports.[12]  The Field Engineers did not record time spent completing the field service reports on the field service reports.[13]  Nor did JT Packard require its Field Engineers to do so as the program was too cumbersome to actually use.[14]  They also performed duties other than those that are recorded on the field service reports, including

---

[6] Clay Dep. 78:18–23; Kraft Dep. 58:3–10; Marcum Dep. 66:5–12; Olivas Dep. 51:13–16; Perry Dep. 123:6–8; Silvers Dep. 37:15–23; Teed Dep. 75:1–3.
[7] Clay Dep. 78:18–79:2; Hershey Dep. 31:7–8; Kerhrmeyer Dep. 33:4–19; Marcum Dep. 66:5–12; Silvers Dep. 37:15–23.
[8] Chau Dep. 39:4–7; Clay Dep. 77:1–16; Hershey Dep. 41:9–42:8; Kerhrmeyer Dep. 35:2–6; Marcum Dep. 66:5–12; Olivas Dep. 51:13–23; Perry Dep. 47:8–17; Silvers Dep. 37:15–23; Teed Dep. 86:16–22.
[9] Clay Dep. 78:4–14; Kerhrmeyer Dep. 57:15–25; Kraft Dep. 80:15–23; Marcum Dep. 66:12–19; Perry Dep. 85:2–6; Teed Dep. 88:16–20.
[10] Chau Dep. 89:1–15; Clay Dep. 62:4–11; Hershey Dep. 50:3–23; Kerhrmeyer Dep. 44:3–11; Kraft Dep. 68:3–22; Marcum Dep. 66:20–67:10; Olivas Dep. 49:6–12; Perry Dep. 85:7–22; Silvers Dep. 49:8–13; Teed Dep. 67:2–14.
[11] Chau Dep. 75:10–20; Clay Dep. 117:16–118:3; Hershey Dep. 53:15–54:8; Kerhrmeyer Dep. 26:12–28:10; Kraft Dep. 64:24–65:4; Marcum Dep. 81:22–25; Olivas Dep. 62:10–63:4; Perry Dep. 71:22–72:25; Silvers Dep. 48:4–48:19; Teed Dep. 57:10–58:2.
[12] Clay Dep. 135:16–136:3; Hershey Dep. 117:8–20; Kerhrmeyer Dep. 49:21–56; Kraft Dep. 153:3–154:7; Marcum Dep. 131:15–132:10; Olivas Dep. 78:14–18; Perry Dep. 82:6–83:18; Silvers Dep. 51:17–24; Teed Dep. 117:3–14.
[13] Chau Dep. 75:22–25; Hershey Dep. 69:17–20; Kerhrmeyer Dep. 57:15–23; Kraft Dep. 105:13–23; Marcum Dep. 125:5–10; Olivas Dep. 49:6–12; Perry Dep. 61:17–62:1; Silvers Dep. 38:20–22; Teed Dep. 110:1–5.
[14] Sears Dep. 84:9-85:11.

checking and sending e-mails,[15] checking their schedule and confirming appointments,[16]

providing technical support by phone to other Field Engineers,[17] phone calls with CSAMs,[18]

other telephone calls,[19] picking up and dropping off materials at the UPS store,[20] picking up and

dropping off batteries and equipment,[21] participating in online and in-person training,[22]

participating in regional meetings and telephone conferences with regional managers,[23]

purchasing or picking up parts,[24] and maintaining tools.[25]   Moreover, JT Packard requires its

Field Engineers perform each of these tasks.[26]   The performance of these tasks is for the benefit

of JT Packard, and JT Packard knows that its Field Engineers were actually performing these

tasks.[27]

---

[15] Chau Dep. 76:4–7; Clay Dep. 135:25–136:3; Hershey Dep. 69:11–16; Kerhrmeyer Dep. 57:15–21; Kraft Dep. 153:17–20; Marcum Dep. 107:25–108:8; Olivas Dep. 64:2–9; Perry Dep. 82:24–25; Teed Dep. 109:23–25.

[16] Chau Dep. 76:4–7; Kerhrmeyer Dep. 33:14–19; Marcum Dep. 107:25–108:8; Olivas Dep. 64:2–9; Perry Dep. 70:1–7; Silvers Dep. 52:21–24; Teed Dep. 109:23–25.

[17] Chau Dep. 76:1–3; Clay Dep. 93:12–94:4; Hershey Dep. 47:4–20; Kerhrmeyer Dep. 57:15–21; Kraft Dep. 104:15–21; Marcum Dep. 107:25–108:25; Olivas Dep. 42:12–18; Perry Dep. 82:16–20; Silvers Dep. 51:17–25; Teed Dep. 110:14–17.

[18] Kerhrmeyer Dep. 37:14–17; Kraft Dep. 125:5–19; Marcum Dep. 107:25–108:22; Olivas Dep. 60:23–25; Perry Dep. 69:1–20; Silvers Dep. 56:7–10; Teed Dep. 117:19–118:4.

[19] Clay Dep. 135:25–136:3; Hershey Dep. 47:21–48:17; Kraft Dep. 153:21–24; Marcum Dep. 107:25–108:25; Perry Dep. 83:14–18; Silvers Dep. 52:8–15; Teed Dep. 117:7–14.

[20] Chau Dep. 40:11–17; Hershey Dep. 57:21–58:14; Marcum Dep. 107:25–108:8; Olivas Dep. 74:24–75:15; Perry Dep. 124:1–6.

[21] Chau Dep. 75:8–11; Kraft Dep. 153:25–154:3; Marcum Dep. 122:2–15, 123:16–19; Olivas Dep. 74:24–75:4; Silvers Dep. 60:3–12; Teed Dep. 115:1–4.

[22] Chau Dep. 92:11–13; Clay Dep. 135:16–21; Kraft Dep. 56:8–10; Marcum Dep. 107:25–108:12; Olivas Dep. 97:16–23; Perry Dep. 41:13–16; Teed Dep. 102:10–104:21.

[23] Marcum Dep. 128:17–129:6; Perry Dep. 89:8–13; Silvers Dep. 51:17–24, 6:17–21; Teed Dep. 105:25–106:11.

[24] Clay Dep. 126:3–7; Kraft Dep. 96:16–97:2; Marcum Dep. 128:2–12; Olivas Dep. 99:5–25; Teed Dep. 116:4–14.

[25] Clay Dep. 139:24–141:4; Kraft Dep. 81:22–82:11; Olivas Dep. 34:4–9; Silvers Dep. 61:16–19.

[26] Sears Dep. 89:25–105:1, Sept. 20, 2011.

[27] Sears Dep. 95:1–105:1.

## ARGUMENT

I.     **The similarly situated standard does not require exact symmetry in either working standards or damages for a collective action to proceed through trial.**

Defendant brought this motion to decertify on the eve of trial in a case that has been before this Court for just under four years.  Defendant stipulated to conditional certification of the matter as a collective action and the Court approved the notice to be delivered to the then current and former Field Engineers at Defendant.  After numerous scheduling orders being issued due to the sale of JT Packard at auction, the Court issued a scheduling order setting the dates for decertification, dispositive motions, and the close of discovery.  Now that discovery has closed, and as the parties prepare for trial, Defendant now asks the Court to split this trial into thirty individual trials, each dealing with the same exact legal issue – whether Defendant's Field Engineers should receive overtime premium compensation for the hours they worked in excess of forty in a workweek.

Plaintiffs do not dispute that the Court has a continuing obligation to ensure that this matter is tried in the most effective and efficient manner and that it is within the Court's discretion to decertify this matter should the Court so deem.  "A district court has wide discretion to manage collective actions."  *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010).  The Court has broad discretion under Fed. R. Evid. 403 to prevent the "needless presentation of cumulative evidence."  *See* 10 Moore's Federal Practice § 403.13.  However, Plaintiffs believe that decertification would simply accomplish Defendant's goal of discouraging the opt-ins form further pursing the matter individually.

An action under the FLSA may be maintained against "any employer ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  29. U.S.C. § 216(b).  The FLSA does not contain a definition of "similarly situated."

At the second stage of the certification process, this Court has considered three factors to assist in determining whether collective treatment is appropriate – whether the Plaintiffs and the opt-ins are truly similarly situated:

(1) whether the factual and employment settings of the individual plaintiffs are similar or disparate;

(2) whether defendants may assert various defenses that appear to be individual to each plaintiff; and

(3) whether fairness and procedural considerations support proceeding as a collective action. *Espenscheid v. DirectSat USA, LLC*, 2011 U.S. Dist. LEXIS 56062 (W.D. Wis. May 23, 2011) (hereinafter "*Espenscheid III*" to conform to JT Packard's brief) *quoting Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (11th Cir. 2001); *Russell v. Ill. Bell Tel. Co.*, 721 F. Supp. 2d 804, 811 (N.D. Ill. 2010).

Each of these factors weighs against decertification in the matter now before the Court. "Notably, even at the decertification stage, similarly situated does not mean identically situated." *Wilks v. Pep Boys*, 2006 U.S. Dist. LEXIS 69537, at *3 (M.D. Tenn. 2006) (internal citation omitted). Moreover, the similarly situated requirement under 216(b) of the FLSA "is considerably less stringent than the requirement of [Rule 23(b)(3)] that common questions 'predominate,'… or, presumably, the Rule 20(a) requirement that claims arise out of the same action or occurrence." *Flavel v. Svedala Indus.*, 875 F. Supp. 550, 553 (E.D. Wis. 1994) (internal citation and quotation omitted). "Congress clearly chose not to have the Rule 23 standards apply to [collective actions], and instead adopted the 'similarly situated' standard. To now interpret this 'similarly situated' standard by simply incorporating the requirements of Rule 23 (either the current version or the pre-1966 version) would effectively ignore Congress' directive." *Thiessen*, 267 F.3d at 1105. Indeed, if plaintiffs were required to be identically situated, as defendant now argues is necessary, no collective action would never proceed past the "second

stage." The amount of time plaintiffs work in a wage case, and therefore can recover damages for, is rarely the same across each plaintiff.

Ultimately, the question before the Court today is whether this case is best tried as a collective action, or thirty separate actions with the same legal standards and the same testimony and evidence. In light of the important the underlying reasoning that collective actions exist under the FLSA – to (1) lower the cost of the action to individual plaintiffs; and (2) increase judicial utility by providing for efficient resolution of many claims in one proceeding – this matter is appropriate for collective treatment. *See Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). In considering each of the three factors enumerated in *Espenscheid III* and *Thiessen*, collective treatment of this matter is the most efficient way for everyone involved to move this case forward and defendant will not have its ability to raise its defenses unduly trampled upon.

## II.    Discovery has established that the employees are in fact similarly situated and that any trial format that is not collective in nature would be a waste of both the parties and the Court's precious resources.

Courts have consistently held that employees can meet their burden of proof as set forth in *Mt. Clemens* through the use of testimony from representative employees; it is not necessary for all affected employees to testify at trial in order to prove FLSA violations or to recover back wages. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1278-79 (11th Cir. 2008), *cert. denied,* 130 S. Ct. 59 (2009); *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 310 (4th Cir. 2006); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 88 (2d Cir. 2003); *S. New England Telecomm. Corp.*, 121 F.3d at 67-68; *Dep't of Labor v. Cole Enter., Inc.*, 62 F.3d 775, 781 (6th Cir. 1995); *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701-02 (3d Cir. 1994); *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th

Cir. 1988); *Brock v. Tony & Susan Alamo Found.*, 842 F.2d 1018, 1019-20 (8th Cir. 1988);

*Donovan v. Williams Oil Co.*, 717 F.2d 503, 506 (10th Cir. 1983); *Donovan v. New Floridian

Hotel, Inc.*, 676 F.2d 468, 472 (11th Cir. 1982). "If common questions predominate, the

plaintiffs may be similarly situated even though the recovery of any given plaintiff may be

determined by only a subset of those common questions." *Alvarez v. City of Chicago*, 605 F.3d

445, 449 (7th Cir. Ill. 2010).

### A. The legal claims and the factual circumstances in *Espenscheid* differentiate from the matter at hand.

Despite Defendant's position that the facts in this matter are "extraordinarily similar" to

the facts in *Espenscheid III*, there are both factual and procedural differences which highlight

that this matter is appropriate of collective treatment despite the holding in *Espenscheid III*.

In *Espenscheid III*, the Court stated that the matter was not appropriate for collective

treatment – "at least under the plan proposed by plaintiffs." *Espenscheid III*, 2011 U.S. Dist.

LEXIS 56062 *3.  In *Espenscheid III*, the class members asserted different theories of liability –

(1) they were denied overtime because they recorded a lunch break they did not take; (2) they

were denied overtime because they were ot compensated for work before the first installation of

the day and the last installation of the day; and (3) they claimed their regular and overtime wages

for non-productive work were calculated improperly.  That is, one employee may have worked

through his lunch, but not pre or post-shift where another may have only worked pre-shift but

always taken his full lunch.  As the employer in *Espenscheid III* paid its employees on a piece

rate basis, plus overtime, and the employees maintained records of the number of hours they

worked each week, the plaintiffs' burden of proof on liability was to prove the time records they

submitted were inaccurate.  As the plaintiffs in *Espenscheid III* claimed various employees

worked off-the-clock in three different ways, the Court required subclasses along the lines of

how each plaintiff claimed the employer violated the FLSA in order to avoid decertification. When the plaintiffs refused to present a trial plan actually using the sub-classes, the Court decertified the matter because the theories as to liability differed along the lines of the subclasses the Court established. However, in this matter, no subclasses are necessary as plaintiffs all claim the same JT Packard uniform policy violated the FLSA – that policy being that plaintiffs were paid a salary with no overtime compensation when they worked in excess of forty hours a week.

The Court in *Espenscheid III* explained that one of its concerns was that averaging the number of hours worked by the employees each week across the entire class would result in too varying a degree of testimony – at some offices, the employees worked around 30 hours a week, at others if was closer to 40 or 50. *Espenscheid III*, 2011 U.S. Dist. LEXIS 56062 *19. Averaging out across the entire class caused the Court concern. This concern is alleviated when the damages in this matter are based upon defendant's partial records of hours worked by plaintiffs (including travel time and on site time). This will effectively address any concern with regard to variation between plaintiffs as to how busy they were, how busy their region was, variations in travel time, how efficient they were in providing services, and general other fluctuations in Field Engineers work.

**B. Plaintiffs and the opt-ins' work experiences did not vary so much that collective treatment is inappropriate.**

Defendants essentially take a position that any multi-plaintiff FLSA case where employees' damages differ across class members must be decertified. As this Court has previously explained

> If simply identifying difference between the parties were enough to
> defeat a motion for class certification, it would be impossible for
> any lawsuit to proceed as a class. Thus, the task of a court
> reviewing a motion for [decertification] is to decide whether any
> differences identified are of the type that would make piecemeal
> litigation a superior vehicle for resolving each of the claims, or, to

> be more specific, whether the differences will make it impractical
> to resolve any significant issues regarding liability on a class wide
> basis."
> *Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 439-440
> (W.D. Wis. 2008).

Although *Spoerle* was a the first stage, the Courts explanation of what really matters in making

its determination today still holds weight.  The Court must look to what plaintiffs must prove,

what defendant's defenses are and determine if either collective treatment or piecemeal treatment

is best.

In reviewing the three factors from *Thiessen*,  the slight variations identified in

defendant's brief do not necessitate piecemeal litigation of this matter – rather they allow for

collective proof.  267 F.3d at 1103.  The variations which TBPS focus on do not go to whether

there is liability in this matter, rather they go to the amount of damages to be awarded to

plaintiffs when liability is established.  Defendant's argument wholly ignores the major elements

of plaintiffs' case and its own defenses that are more appropriate for collective determination

than piecemeal litigation.  Piecemeal litigation as to these elements in both plaintiffs and

defendant's cases would be an enormous waste of the parties and court's resources.

### i.   The factual and employment settings of the individual plaintiffs are much more similar that JT Packard states in its brief.

Although much of the testimony at trial may revolve around the number of hours

plaintiffs worked that were not recorded in any manner by JT Packard, that is not the core issue

as TBPS claims in its brief.  (Def.'s Br. p. 19).  Rather, the core issue in this case is whether JT

Packard violated the FLSA – whether there is liability under the FLSA.

The FLSA's collective action provision is designed to provide for cases like the present,

"in which the **claims of different employees, different in amount but all arising out of the**

**same character of employment**, can be presented and adjudicated, regardless of the fact that

they are separate and independent of each other." *Shaine v. Armour & Co.*, 40 F. Supp. 488, 490 (W.D. Ky. 1941) (emphasis added).  Moreover, "*similarly* situated does not mean *identically* situated."  *Wilks*, 2006 U.S. Dist. LEXIS 69537, at *3 (internal citation omitted); see also *Pendlebury v. Starbucks Coffee Co.*, 518 F. Supp. 2d 1345, 1362 (S.D. Fla. 2007) ("[E]very class under § 216(b) will have differences; however, class members need only be similar, not identical").  "If one zooms in close enough on anything, differences will abound[.]"  *Kasten v. St.-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 956-957 (W.D. Wis. 2008) (citing *Frank*, 2007 U.S. Dist. LEXIS 71179, at *4).

The Court's inquiry as to the factual employment settings should focus on "whether the existence of individual issues will interfere substantially with plaintiffs' ability to prove their case with evidence that is class-wide in nature."  *Espenscheid v. DirectSat USA, LLC*, Case No. 09-cv-625-bcc, Opinion and Order, p. 22 (Dkt. 387) (W.D. Wis., February 10, 2011) ("*Espenscheid II*").  Logically, "the more *material distinctions* revealed by the evidence, the more likely the district court is to decertify the collective action."  *Anderson v. Cagle's Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (emphasis added).  "It is clear that plaintiffs are similarly situated when they suffer *from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs*."  *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 585 (6th Cir. 2009) (emphasis added).

As the core issue for trial is whether JT Packard violated the FLSA by failing to pay overtime compensation to its Field Engineers, the question before the court is whether the plaintiffs are similarly situated with regard to proving that alleged violation of the FLSA.  After a *prima facie* case is established and defendant's defenses are addressed, the court will then look to damages.

**1. Not only is collective testimony appropriate as to liability in this matter, it is more efficient to find liability collectively than through piecemeal litigation.**

Plaintiffs each worked for JT Packard as Field Engineers. JT Packard uniformly paid Field Engineers on a salary basis until September 2009. Under JT Packard's uniform payroll policy, plaintiffs did not receive overtime compensation prior to September 2009 when they worked over forty hours in a workweek. The FLSA requires employer pay overtime compensation to employees who work in excess of forty hours a week. Therefore, plaintiffs are similarly situated as "they suffer from a single, FLSA-violating policy, and … proof of that policy … proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 585 (6th Cir. 2009). The alleged variations identified in TBPS' Brief in Support of its Motion to Decertify do not disrupt Plaintiffs' *prima facie* case. Rather, those variations go to the amount of damages that are appropriate.

An employee who brings suit under the FLSA for unpaid overtime compensation "has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. *Mt. Clemens Pottery*, 328 U.S. at 686-687. To establish its *prima facie* case, plaintiffs must demonstrate that: (1) JT Packard employed them; (2) JT Packard is an enterprise engaged in interstate commerce covered by the FLSA; (3) each Plaintiff actually worked in excess of a 40-hour workweek; and (4) JT Packard did not pay any overtime wages to them. *See Morgan v. Family Dollar Stores,* 551 F.3d 1233, n. 68 1277 (11th Cir. 2008).

Despite defendant's current posturing, each individual plaintiff does not have to testify at trial to establish this *prima facie* case as to Defendant's uniform policy. It is not disputed that defendant employed plaintiffs, or that defendant was an enterprise engaged in interstate

commerce covered by the FLSA.  Answer ¶¶ 39, 43, 44; Dkt. 15.  Moreover, defendant

uniformly paid plaintiffs on a salary basis prior to September 11, 2009, without overtime

premium compensation.  Answer ¶ 2; Ward Dep. pp.  6:21-7:10; 10:1-22.  Therefore, the only

remaining issue in proving plaintiffs' *prima facie* case is whether plaintiffs actually worked in

excess of forty hours a week.

      Establishing that plaintiffs worked in excess of forty hours in at least one workweek is

not something that necessitates the testimony of each plaintiff at trial.  JT Packard's partial

records of the time Field Engineers worked – the utilization reports – show that there were

numerous workweeks where Field Engineers worked in excess of forty hours a week.[28]  Mengelt

---

[28] Plaintiffs worked in excess of forty hours a week in the following weeks: **Andrew Fritscher**:10/2/2006, 4/16/2007, 5/14/2007, 8/20/2007, 10/1/2007 ,10/8/2007, 10/15/2007, 3/24/2008, 3/31/2008, 4/14/2008, 5/12/2008, 7/7/2008, 7/21/2008, 2/2/2009, 5/4/2009.  **Andy Ai**: 7/24/2006, 8/7/2006, 9/11/2006, 11/127/2006, 12/4/2006, 1/1/2007, 2/5/2007, 2/19/2007, 3/5/2007, 5/14/2007, 5/28/2007, 6/11/2007, 7/9/2007, 10/8/2007, 11/12/2007, 12/10/2007, 1/14/2008, 1/28/2008, 2/11/2008, 2/18/2008, 2/25/2008, 3/3/2008, 3/24/2008, 4/14/2008, 4/28/2008, 10/27/2008, 12/8/2008, 1/12/2009, 1/19/2009, 1/26/2009, 2/2/2009, 2/23/2009, 3/2/2009, 3/9/2009, 3/16/2009, 3/30/2009, 4/6/2009, 4/20/2009, 4/27/2009, 5/4/2009, 5/11/2009, 5/18/2009, 5/25/2009, 6/1/2009, 6/29/2009.  **Brian Teed**: 10/16/2006, 4/16/2007, 6/11/2007, 1/14/2008, 3/31/2008.  **Christopher Kraft**: 8/7/2006, 8/14/2006, 10/30/2006, 4/9/2007.  **Darrick Nelson**: 6/16/2008, 6/23/2008, 8/18/2008, 9/22/2008.  **Henry Chau**: 8/28/2006, 10/9/2006, 11/13/2006, 2/12/2007, 9/17/2007, 10/8/2007, 1/7/2008, 6/16/2008, 10/6/2008, 10/27/2008, 12/8/2008, 2/16/2009, 3/2/2009, 5/11/2009, 7/6/2009, 7/13/2009, 8/3/2009, 9/21/2009.  **James Provenzale**: 7/31/2006.  **James Benson**: 9/11/2006.  **Jeff St. Onge**: 11/6/2006, 1/29/2007, 4/16/2007, 7/9/2007, 7/16/2007, 8/13/2007, 11/19/2007, 12/10/2007, 3/24/2008, 4/7/2008.  **Jesse Olivas**: 10/9/2006, 10/30/2006, 11/27/2006, 1/22/2007, 2/19/2007, 4/9/2007, 5/14/2007, 5/28/2007, 6/11/2007, 7/9/2007, 12/3/2007, 1/14/2008, 1/21/2008, 1/28/2008, 3/3/2008, 3/10/2008, 3/24/2008, 4/14/2008.  **Jimmy Rivera**: 7/17/2006, 8/21/2006, 8/28/2006, 9/25/2006, 10/30/2006, 11/6/2006, 11/13/2006, 1/9/2007, 2/19/2007.  **Keith Jackson**: 7/24/2006, 7/31/2006, 9/11/2006, 10/2/2006, 10/9/2006, 10/16/2006, 10/23/2006, 10/30/2006, 11/27/2006, 12/11/2006, 1/1/2007, 1/8/2007, 2/5/2007, 2/12/2007, 2/26/2007, 3/5/2007, 3/12/2007, 4/9/2007, 4/16/2007, 5/21/2007, 6/11/2007, 6/25/2007, 7/9/2007, 7/16/2007, 8/6/2007, 8/13/2007, 8/27/2007, 9/17/2007, 9/24/2007, 10/1/2007, 10/8/2007, 11/5/2007, 11/19/2007, 11/26/2007, 12/3/2007, 12/17/2007, 12/24/2007, 12/31/2007, 1/7/2008, 1/14/2008, 1/28/2008, 2/25/2008, 3/10/2008.  **Kevin Burk**: 7/24/2006, 10/16/2006, 11/27/2006, 1/29/2007, 6/18/2007, 9/17/2007, 9/24/2007.  **Lewis Tate**: 5/5/2008.  **Marcus Clay**: 8/13/2007, 9/24/2007, 10/1/2007, 7/14/2008, 7/21/2008, 9/8/2008, 10/13/2008, 10/20/2008, 11/3/2008, 11/17/2008, 12/1/2008, 12/8/2008, 1/12/2009, 1/19/2009, 2/2/2009, 3/2/2009, 3/9/2009, 3/16/2009.  **Michael Anderson**:  9/4/2006, 7/23/2007, /13/2007, 9/24/2007, 10/29/2007, 11/19/2007, 1/7/2008, 5/5/2008, 6/16/2008, 9/8/2008, 9/29/2008, 11/17/2008,1/12/2009, 1/19/2009, 3/9/2009, 4/6/2009, 4/20/2009, 4/27/2009, 5/4/2009, 7/6/2009, 7/13/2009, 9/14/2009, 9/21/2009.  **Michael Kehrmeyer**: 8/7/2006, 11/6/2006, 1/1/2007,2/5/2007, 4/2/2007, 4/23/2007, 4/30/2007, 5/7/2007, 5/14/2007.  5/21/2007, 6/4/2007, 6/11/2007, 7/2/2007, 8/6/2007, 8/27/2007, 9/10/2007, 9/17/2007, 9/24/2007, 10/1/2007, 10/15/2007, 11/5/2007, 11/26/2007.  **Michael McNamara**: 10/2/2006, 11/13/2006, 2/12/2007, 2/19/2007, 3/19/2007, 4/2/2007, 4/16/2007, 9/24/2007, 1/7/2008, 3/31/2008, 5/5/2008, 6/2/2008, 6/16/2008, 9/22/2008, 10/13/2008, 10/20/2008, 1/5/2009, 1/26/2009, 2/2/2009, 2/9/2009, 2/23/2009.  **Norman Eastwood Jr.**: 11/27/2006, 4/2/2007, 11/5/2007, 2/4/2008, 2/18/2008, 4/21/2008.  **Oma Graves**: 7/16/2007, 2/25/2008, 4/28/2008, 5/5/2008, 5/19/2008, 5/26/2008.  **Oumar Sow**: 7/24/2006, 7/31/2006, 10/30/2006.  **Robert Dabal**: 5/7/2007, 6/4/2007, 8/13/2007, 9/10/2007, 10/22/2007, 11/5/2007,

Dep. pp. 57:19-58:9, Ex. 41.  Therefore, each plaintiff has, within the statute of limitations, established that JT Packard's uniform policy failing to pay overtime compensation violates the FLSA.

Once the employee establishes a *prima facie* case, the burden shifts to the employer to prove that the employees are exempt from the FLSA's coverage.  JT Packard has not argued that the Motor Carrier Act exemption – the only exemption at issue - could apply after August 9, 2006.  *See* Opinion and Order, Dkt. 127 p. 8.  Whether or not JT Packard's Field Engineers are or are not exempt under the Motor Carrier Act exemption as amended by SAFTEA-LU and the SAFTEA-LU Technical Corrections Act is not a determination which requires individual testimony from each plaintiff.  The application of the SAFTEA-LU Technical Corrections Act looks to what JT Packard knew, not what each plaintiff knew.  Therefore, there is no difference in plaintiffs' factual or employment setting which would interfere with plaintiffs' ability to prove that JT Packard should have paid them overtime compensation when they worked over forty hours in a workweek.

In *Espenscheid III*, liability depended on the number of hours worked by plaintiffs in that case because they alleged they worked hours over forty and were not compensated for that off the clock work.  Whereas in the matter at hand, defendant's liability does not arise out of allowing its employees to work off the clock, but rather its decision to not pay its employees overtime compensation at all.  Moreover, in *Espenscheid III* the plaintiffs claimed that their off-

---

11/12/2007.  **Scott Wolf**: 6/4/2007, 7/9/2007.  **Tim Hershey:** 7/10/2006, 7/17/2006, 10/9/2006, 2/26/2007, 5/7/2007, 6/18/2007, 7/16/2007, 9/17/2007.  **Walter Gibson:** 8/11/2008, 8/25/2008, 9/8/2008, 9/15/2008, 9/29/2008, 10/13/2008, 10/20/2008, 12/8/2008, 1/15/2009, 3/9/2009, 4/20/2009, 4/27/2009, 5/4/2009, 5/18/2009, 6/1/2009. **Wesley Marcum**: 7/31/2006, 8/14/2006, 8/28/2006, 9/11/2006, 9/25/2006, 10/16/2006, 10/23/2006, 10/30/2006, 12/11/2006, 1/15/2007, 1/22/2007, 2/26/2007, 4/9/2007, 6/25/2007, 9/17/2007, 9/24/2007, 10/22/2007, 12/3/2007, 12/10/2007, 12/17/2007, 2/4/2008, 2/18/2008, 3/3/2008, 5/12/2008, 6/2/2008, 6/9/2008, 6/16/2008, 6/23/2008, 8/25/2008, 9/22/2008, 11/3/2008, 11/10/2008, 12/1/2008, 2/2/2009, 3/9/2009, 3/30/2009, 4/6/2009, 4/13/2009, 4/20/2009, 4/27/2009, 6/22/2009, 6/29/2009, 8/24/2009.  **William Perry, Jr:** 7/17/2006, 7/31/2006, 8/14/2006, 9/11/2006, 9/18/2006, 9/25/2006, 10/16/2006, 1/8/2007, 2/5/2007, 2/12/2007, 2/26/2007, 3/19/2007, 3/26/2007, 9/17/2007, 12/10/2007, 3/10/2008, 5/12/2008.

the-clock work arises in three different circumstances for which the Court made subclasses.  No subclasses are necessary here to establish liability because the only determinative issue is whether defendant's uniform policy to not pay plaintiffs overtime compensation violated the FLSA.

Defendant does not argue that the alleged variations identified in its brief have any effect on whether or not plaintiffs are entitled to overtime compensation – whether liability under the FLSA exists.  This is not a case where liability turns on plaintiffs' individual experiences thus requiring an inquiry into each individuals circumstances to determine liability.

Defendant argues that tasks performed by plaintiffs may not be compensable under the FLSA and that is should be able to cross-examine each plaintiff on whether such activities are compensable.  Def.'s Br. p. 24.  However, such an argument does not necessitate individualized testimony.  Plaintiffs generally performed all the same duties, defendant was aware of that work and that work was for defendants' benefit.  Sears Dep. 89:25–105:1.  Whether or not certain work is compensable under the FLSA is better suited for collective testimony to conserve on both the parties and judicial resources.

With regard to Plaintiffs *prima facie* case of a violation of the FLSA's, Plaintiffs' and the opt-in's work experiences did not vary in any meaningful way that would make collective treatment inappropriate.  The FLSA requires compensation at a rate of time and one half the regular rate when employers cause their employees to work in excess of forty hours a week.  29 U.S.C. § 207(a)(1).  Defendant did not compensate plaintiffs in such a manner until September, 2009.  No factual difference identified by Defendant stands in the way of collective proof that JT Packard's uniform policy of not paying overtime compensation, plaintiffs performed work under the FLSA for which they were not properly compensated.

> **2. Collective testimony appropriate as to the amount of plaintiffs'
> damages, especially in light of defendant's failure to keep
> accurate records of the hours worked by plaintiffs.**

Defendant spends much of its argument highlighting variations in the estimations as to the number of hours plaintiffs spent performing certain tasks. Had Defendant maintained proper records of the number of hours each plaintiff worked, as they have since September 2009, there would be no need for any opt-in to testify as to the amount of hours they worked. Because defendant only recorded travel time and on-site time, without maintaining any record as to the number of hours each Field Engineers spent performing other administrative tasks, an estimation under *Mt. Clemens Pottery* is required. To require individualized testimony in the absence of accurate records would simply reward defendant for not maintaining proper records.

Defendant argues that each individual must testify about his own experience as to the number of hours worked because "none of the testifying witnesses [have] first-hand knowledge of the amount of hours non-testifying witnesses worked." *Baden-Winterwood v. Life Time Fitness Inc.*, 729 F. Supp. 2d 965, 989 (S.D. Ohio 2010). But the court in *Life Time Fitness* rejected this proposition as have other courts. *Id*. No case identified by JT Packard establishes that each plaintiff must prove by a preponderance of the evidence each plaintiff's hours worked where JT Packard itself failed to maintain accurate records. Moreover, requiring each opt-in to testify as to the number of hours worked would result in highly repetitive testimony which must be avoided.

Once liability is established in an FLSA case, a determination as to the extent of damages caused by an employers' violation of the FLSA is simple assuming the employer has maintained proper records of each hour the employees worked. *Mt. Clemens Pottery*, 328 U.S. at 687 ("When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records"). If defendant had the records, the

custodian of that record would simply testify at trail regarding the amount of hours the employees worked.  However, where an employer fails to maintain accurate records of each hour its employees work, the *Mt. Clemens Pottery* standard allows courts "to award back wages under the FLSA to non-testifying employees based upon the fairly representative testimony of other employees."  *McLaughlin v. Seto*, 850 F.2d 586, 589 (9th Cir. 1988); *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. Md. 1985) ("There is no requirement that … testimony must refer to all non-testifying employees.  Such a requirement would thwart the purposes of the sort of representational testimony clearly contemplated by *Mt. Clemens*.").  Courts have granted damages under the FLSA based upon the representative testimony of a small percentage of employees.  *See Donovan v. Burger King Corp.*, 672 F.2d 221, 225 (1st Cir. 1982).  The requirement is only that the testimony be fairly representational.  *Bel-Loc Diner, Inc.*, 780 F.2d at 1116.

As the Supreme Court *Mt. Clemens Pottery Co*. instructed:

> where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes … the solution … is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.  Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.  In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.
> 328 U.S. at 687-88.

As Defendant did not maintain any record establishing the amount of time each plaintiff spent performing various administrative tasks, Plaintiffs must now proofer their best estimate as to the number of hours they worked outside of what was recorded on the FSR.  Defendant now wishes the collective action be blown up because its own failure caused varying testimony as to the amount of time worked.

That various plaintiffs testify that they spent a variable amount of time working for JT Packard on various tasks does not necessitate decertification.  In *Seto*, the testimony of the five employee witnesses was inconsistent as to the exact hours of overtime worked.  *McLaughlin v. Seto*, 850 F.2d 586, 589 (9th Cir. Cal. 1988).  Each of the five witnesses testified that they worked before 7:30, but only three stated that they worked after 4:30.  *Id*.  This testimony was sufficient to award damages to the twenty-three non-testifying witnesses despite this variation in the amount awarded.  Where defendants failed to maintain accurate records, plaintiffs are not required to prove their damages with precision.

In *Lifetime Fitness*, the court heard testimony from employees in various positions who testified as to the number of hours they worked which was representative of other employees. *Baden-Winterwood v. Life Time Fitness Inc.*, 729 F. Supp. 2d 965, 999-1001 (S.D. Ohio 2010). Importantly, their estimations of the number of hours they worked were not the same – there was variation.  *Id*. at 999-1000 (two employees testified for three job classifications for the number of hours their worked, which was extrapolated out as damages to the other non-testifying opt-ins). Two Members Activities Department Heads testified – one indicated she worked 55 hours a week and the other indicated 53 hours a week during one period of time and 50 hours in the other period of time.  The court averaged it at 52.7 hours per week.  *Id*. at 999.  Two Life Spa Department Heads testified that they worked 63 and 55 hours respectively for an average of 59

hours a week.  *Id.* at 1000.  Two Life Café Department Heads testified that they worked 55 hours

per week and 58 hours respectively for an average of 56.5 hours a week.  *Id.* at 1000.  The Court

then took the average for each classification and calculated damages for the non-testifying

employees based on that average hours worked.  *Id.* at 1000-1010.

 Had defendant maintained proper records which reflected varying amounts of time

plaintiffs spent performing certain tasks, defendant could not now argue that decertification was

proper because of this variation.  Defendant zooms in as far as possible to focus in on perceived

variations – however, in the aggregate, those variations are not so great.  As the Court will be

determining what damage award is appropriate, the proper question is how much time in addition

to what was recorded was worked each week on average.  The amount of time of time the

testifying plaintiffs spend on individual tasks each week may be relevant to the weight the court

applies to that employees testimony in determining the average aggregate amount worked, but it

is not relevant to whether or not plaintiffs are similarly situated.  At trial, plaintiffs will present

the Court with testimony of approximately twenty-five percent of the plaintiffs (eight plaintiffs)

who will testify about the number of hours they worked in excess of what was recorded on their

FSRs.[29]  The Court can then calculate damages using the utilization reports as a starting point

and adding the number of addition administrative time to JT Packard's partial records.[30]

Plaintiffs "recovery will be determined by the application of mathematical formulae common to

all class members, although the specific variables (number of hours worked, hourly wage, etc.)

will vary from individual to individual."  *Alvarez v. City of Chicago*, 605 F.3d 445, 449 n.1 (7th

Cir. 2010).

---

[29] These individuals may also testify about the degree to which the utilization reports do not properly capture all the time they report on the FSRs.  However, as Defendants have not yet fully complied with Plaintiffs' discovery requests and produced the FSRs, this has yet to be determined.

[30] Presumably, the parties can agree and stipulate to the other needed mathematical calculations to assist the court in calculating damages.

In using the utilization reports as a starting point for calculating damages, many of defendant's concerns will be alleviated.  Defendant claims that decertification is proper because t there is no standard schedule for plaintiffs and therefore individualized testimony is necessary as to the number of hours worked by plaintiffs.  (Def.'s Br. p. 20).  However, if the utilization reports are used as a starting point, rather than simply testifying about the average number of hours worked each week in total, the variation in assigned jobs and travel time is taken out of the equation.

Defendant also argues that decertification is appropriate because there was variation in the testimony of the plaintiffs as to whether they performed certain tasks during a period that is recorded on the FSRs.  (Def. Br. pp. 20-21).  At trial, plaintiffs will testify with regard to the amount of time they worked which was not recorded on the FSRs – better directed questioning of the plaintiffs will ensure that they are testifying only about the amount of time that was not captured by the FSRs.  Taking the filling out of FSRs as an example, testimony about how often plaintiffs filled out the FSRs while on a client's site does not assist the Court in determining what damages are.  Rather, plaintiffs will testify as to how much time they spent filling out their FSRs which was not captured by the FSRs.  Each Field Engineer testified that they spent some time filling out FSRs that took place outside of the time recorded on the FSR.  Similarly, at trial, the focus will be on how much tech support was performed outside of what was recorded on the FSRs – not whether or not tech support took place during a time that was recorded on the FSR.

Decertifying this case because there is variation in the amount of time it took plaintiffs to perform certain tasks is improper in light of defendant's failure to maintain proper records of the hours plaintiffs worked.  Damages may be established by representative testimony under the *Mt. Clemens Pottery* standard.

**ii. Defendants various defenses can and will be addressed on a collective basis – they do not necessitate individual inquiries into each employees factual circumstances.**

Most, if not all of JT Packard's defenses can be dispensed with on a collective basis – they do not require the testimony of each and every plaintiff.  The only defense TBPS identifies necessitating individualized inquiries is its Portal-to-Portal defense.  (Def.'s Br. pp. 21-22, 24).  Assuming that TBPS claims that this is important to the Court's determination of whether or not plaintiffs' travel time is compensable, this issue is not in dispute – Defendant's answer admits that the travel time is in fact compensable.  Answer ¶ 42, Dkt. 15.  Moreover, plaintiffs uniformly testified that they performed multiple tasks in addition to loading their vehicles prior to leaving for the customer site in the morning and after loading tools at the end of the day.  There is no variation in the testimony as to this issue – collective treatment is appropriate.

Defendant's good faith defense under 29 U.S.C. § 260 looks to whether Defendant acted in good faith or not.  This is best decided on a collective basis as each plaintiff's individual testimony does not establish whether or not JT Packard had good faith.  Additionally, JT Packard argues that liquidated damages are not appropriate in a successor liability case under the FLSA.  There is no case law authority on this novel argument.  Nor will plaintiffs' individual testimony assist the Court in making its determination – this is a legal argument.  This defense, or argument, is most efficiently dealt with on a collective basis.

If the case is decertified, Defendant's Portal-to-Portal, good faith, and liquidated damages defenses will be plead, briefed, testified about and decided thirty different times.  This would be a monumental waste of the Court's resources.

The only other argument advanced by defendant is that the named plaintiffs "are subject to credibility challenges, but the same could be said of any witness, so it is difficult to see how that could be a barrier to class certification."  *Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D.

434, 440 (W.D. Wis. 2008); (Def.'s Br. p. 24).  Defendant will have the opportunity to attack the credibility of the eight testifying plaintiffs and the Court will weigh each testifying plaintiff's credibility in determining to what extent damages are appropriate.

### iii.  Fairness and procedural concerns weigh in favor of collective trial rather than thirty individual trials before this Court.

Considerations of fairness support maintaining this action as a collective action. Proceeding collectively affords plaintiffs the "advantage of lower individual costs to vindicate rights by the pooling of resources" and "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).  Moreover, remaining as a collective action would result in costs savings to defendant in that it would not be faced with thirty individual separate trials.  In arguing for thirty individual trials rather than one collective trial with shared proof, defendant's motivation is plain - if the matter is decertified, some of the individuals would not pursue their individual claims due to the inherent costliness of litigation. The Court must bear in mind that the FLSA is a remedial statute that should be liberally construed in favor of the Plaintiffs. *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1264-1265 (11th Cir. 2008).  Taken together the cost and efficiency savings to everyone involved weigh heavily against decertification.

In addition to the fairness as to the Court and to the parties, it would be unfair to various witnesses who will be called by plaintiffs to testify at thirty individual trials including Dan Sears, Tom Ward, Kevin Mengalt, Srinivasu Denduluri, Kaeline Fontaine, Michelle Schwery, Tony Santini and potentially others.  Their testimony would substantially be the same at each trial. Certainly, fairness and procedural concerns as to these witnesses does not weigh in favor of these witnesses.

This matter is very dissimilar to *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (U.S. 2011).  Defendants' liability and each of defendant's defenses present questions which are common to the entire class.  Even the question as to how much time plaintiffs worked in addition to what is recorded on the FSRs is a question that is common to each and every plaintiff.  The Supreme Court in *Dukes* searched for "common answers apt to drive the resolution of the litigation."  Here, those common questions exist and are the primary questions to be answered by the Court:

➢ Whether defendant violated the FLSA by failing to pay overtime compensation;

➢ Whether defendant failed to maintain accurate records of each hour worked as required by 29 U.S.C. § 211 when it did not record the administrative time worked by plaintiffs;

➢ Whether TBPS should be liable for liquidated damages when they were brought in as a defendant under the common law successor liability doctrine;

➢ Whether the tasks performed by each and every plaintiff are compensable; and

➢ Whether defendant acted in good faith under 29 U.S.C. § 260.

Defendant has not established how precisely any of these questions cannot be answered collectively or how each plaintiffs' individual testimony is required to answer these common questions.  Defendant only argues in its brief that variations in damages provide sufficient reason to decertify the matter.

In passing, defendant argues that a collective trial would bring up such due process concerns that the case should be decertified.  (Def.'s Br. p. 25).  Defendant cites no case which discusses the due process concerns in depth.  The due process argument actually favors plaintiffs. Defendant's due process "rights must be balanced with the rights of the plaintiffs, many of whom likely would be unable to bear the costs of an individual trial, to have their day in court." *Wilks v. Pep Boys*, 2006 U.S. Dist. LEXIS 69537 (M.D. Tenn. Sept. 26, 2006) *citing Glass v. IDS Fin. Servs., Inc.*, 778 F. Supp.1029, 1081-82 (D. Minn. 1991) (finding that, although the defendant

complained that collective treatment would infringe upon its due process rights, such treatment was necessary in order to protect the rights of the plaintiffs, who were "less able to bear the cost of separate trials because they ha[d] fewer resources than [the defendant]").  In balancing those rights here, it is plane to see that it weighs in favor of plaintiffs.

Congress, in seeking to allow plaintiffs to vindicate their rights under the FLSA, provided them with the opportunity to do so collectively when appropriate.  This Court should allow the plaintiffs to proceed collectively in line with Congress's determination that defendants will not always have the opportunity to pursue individual defenses against FLSA plaintiffs but, instead, must collectively defend a suit that is so pursued.

### C. Dismissal is not appropriate for opt-in plaintiffs who have not yet responded to invalid discovery requests from defendant.

As collective treatment and representative testimony is appropriate in this matter, as described above, defendant's argument that certain opt-in plaintiffs should be dismissed for not responding to discovery is unavailing.  As the Court is well aware, Fed. R. Civ. P. 30 and 36 limit the amount of depositions and interrogatories that a party may serve during discovery.  To date Defendant far exceeded the 25 interrogatories available and has taken twelve depositions. Defendant has filed no motion to expand these limits and the Court has granted no such order. Plaintiffs should not be required to answer discovery and sit for depositions in excess of the limitations of the Federal Rules.  Moreover, discovery objections have been propounded upon defendant for these individuals.  Decl. of LAJ, 12/28/11.  Despite the Rules limitations, Plaintiffs have and will continue to work with Defendants to produce information which Defendants have requested when available.

Defendant cites several cases which have dismissed opt-in plaintiffs for failing to participate in discovery, but offer no analysis of those cases.   However, the facts show that the

cited cases are much different than the instant case.  In *Williams v. Le Chaperon Rouge*, 2008 U.S. Dist. LEXIS 39071 (N.D. Ohio May 14, 2008) the Court dismissed several plaintiffs for a lack of prosecution of the claims.  Such is not the case here as Plaintiffs are actively prosecuting the claims.  With the ability to use representative testimony, all plaintiffs are prosecuting their claims and it is not necessary for every plaintiff who has opted in to respond to discovery and sit for a deposition.  *See Morales v. Farmland Foods, Inc.*, 2010 U.S. Dist. LEXIS 96626 (D. Neb. Aug. 27, 2010) ("Allowing the defendant to obtain the discovery sought from each opt-in class member is inappropriate in this FLSA lawsuit"); *See also Fast v. Applebee's Int'l, Inc.*, 2008 U.S. Dist. LEXIS 105159 (W.D. Mo. Dec. 31, 2008).

Likewise, in *Lenora* the Court dismissed the named plaintiff in a Rule 23 class action for failing to participate in discovery.  Such a Plaintiff has a greater responsibility as the class representative of a potential Fed. R. Civ. P. 23 class action as compared to an opt-in plaintiff in a collective action under the FLSA.

Further complicating the issue in the instant case is that three of the opt-in plaintiffs, Daly, Fritscher and McNamara have died since the filing of their consent forms.  Obviously it is impossible for these individuals to be deposed or answer interrogatories, but their estates should not be deprived on the opportunity to recover the wages that are rightfully owed to these individuals.  Representative testimony will allow for these individuals to recover and they should not be dismissed.

**III.    Should the Court decertify the matter, Plaintiffs respectfully request the Court toll the statute of limitations for a period of thirty days and to enforce the Court's successor liability order upon future filed claims.**

Should this matter be decertified, Plaintiffs as well as the opt-in Plaintiffs intend to move forward with individual suits in the Western District of Wisconsin.  It is clear that an opt-ins' statute of limitations stops running on the date that he files a consent to join with the Court.

> In determining when an action is commenced for the purposes of
> section 255 of this title, an action commenced on or after May 14,
> 1947 under the Fair Labor Standards Act of 1938, as amended,
> shall be considered to be commenced on the date when the
> complaint is filed; except that in the case of a collective or class
> action instituted under the Fair Labor Standards Act, as amended,
> it shall be considered to be commenced in the case of any
> individual claimant – (a) on the date when the complaint is filed, if
> he is specifically named as a party plaintiff in the complaint and
> his written consent to become a party plaintiff is filed on such date
> in the court in which the action is brought; or(b) If such written
> consent was not so filed or if his name did not so appear -- on the
> subsequent date on which such written consent is filed in the court
> in which the action was commenced." Groshek v. Babcock &
> Wilcox Tubular Products Div., 425 F. Supp. 232, 234 (E.D. Wis.
> 1977) (citing 29 U.S.C. §256)

In the event of decertification, Plaintiffs ask that the Court follow established precedent across the country and toll the opt-ins' statutes of limitations for a period of 30 days after entry of an order granting decertification.  This will allow the opt-ins to re-file their individual claims with this court without any loss of coverage under the FLSA due to the running of the statute of limitations and to allow the date that the opt-in form was originally filed to serve as the beginning point for FLSA coverage.  *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511-12 (M.D. La. 2005) (30 days to re-file); *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 284 (N.D. Tex. 2008) (same); *Johnson v. TGF Precision Haircutters, Inc.*, 2005 U.S. Dist. LEXIS 44259   (S.D. Tex. Aug. 17, 2005) (same).

Additionally, in the event that the collective action is decertified and individual suits are necessitated, this Court should preemptively prevent the likely inefficiencies of multiple motions by affirmatively declaring that Thomas & Betts is the employer of each individual who brings suit based upon successor liability, as set forth in the Court's earlier order (Dkt. 103-0), and the doctrine of collateral estoppel (issue preclusion).

> "Issue preclusion [ ] arises when the following factors are present:
> (1) the issue was actually litigated in a prior proceeding; (2) there
> was a full and fair opportunity to litigate the issue at that time; (3)
> the issue was actually  decided in the first action; (4) a valid, final
> disposition of the issue in question was made on the merits; (5) it
> was necessary to decide the issue in the first case; (6) the issue
> occupied a high position in the first case; (7) the later litigation is
> between the same parties or parties that are bound by the previous
> litigation; (8) the issue was foreseeably important at the time of the
> first case; n6 and (9) there are no special considerations, such as
> fundamental fairness, which deny application of issue preclusion
> rules." *Rucker v. Shalala*, 894 F. Supp. 1209, 1216 (S.D. Ind.
> 1995) (internal citation omitted).

In the instant case, all of the factors are present which would warrant the preclusion of

the re-litigation of the "employer" issue at each individual case.  (1) Whether or not Thomas &

Betts was the employer was litigated in this matter.  (2) There was a full and fair opportunity to

litigate the issue as both sides submitted extensive briefing. (3) The issue was decided by this

Court in an earlier order (Dkt. 103-0).  (4) The Court made a valid and final disposition on the

issue.  (5) It was necessary to decide the issue in this case because if it was not decided the case

would have likely ended as old JT Packard ceased to exist with any assets.  (6) The issue

occupied a high position in this case, because, as just described, if Thomas & Betts was not

determined to be the employer, the matter would have effectively been disposed of. (7) Any later

litigation will be between the same parties.  The prospective individual Plaintiffs were all opt-in

Plaintiffs at the time of the earlier decision, and Thomas & Betts is still the defendant in any

individual action. (8) The issue of who is the employer was certainly foreseeably important

because it was likely dispositive of the entire matter. (9) There are no considerations that would

not warrant application of the issue preclusion rules.  Thomas & Betts and every prospective

individual Plaintiff had the opportunity to fully litigate the issue and there will be no new

information to be added to the factual or legal arguments.  If the equities were to be weighed in

any party's favor, it should be towards the individual plaintiffs who should not be forced to bear the expense of litigating an issue that was already decided.  For these reasons, Thomas & Betts should be considered the employer of all Plaintiffs who file individual suits should the matter be decertified.

## CONCLUSION

When determining whether a matter could be tried collectively, or if the matter is better suited for piecemeal litigation on an individualized basis, the Court must look to what proof is necessary to prove liability, and by whom that proof will be supplied at trial.  Here, individualized testimony is not necessary to establish that JT Packard violated the FLSA. Moreover, defendant's defenses do not necessitate individualized proof.  Therefore, the entire matter, except for damages, is best decided by collective testimony.

As to damages, normally plaintiffs' testimony is not necessary where an employer maintains accurate records.  However, only because defendant failed to maintain accurate records of the number of hours plaintiffs worked, must plaintiffs provide testimony regarding damages.  Because defendant's failure to follow the law cannot provide defendant with an advantage, court have followed the supreme court in applying the Mt. Clemens Pottery standard allowing representative testimony of estimations as to the number of hours worked.  Because defendant did not maintain accurate records, defendant cannot be heard to complain about slight variations in the testimony of plaintiffs damages, which in the aggregate is similar.

Dated this 28th day of December, 2011.

CROSS LAW FIRM, S.C.

By: _____**s/LARRY JOHNSON**_____

Larry A. Johnson
Noah Reinstein
Cross Law Firm, S.C.
505 Arcadian Avenue

Waukesha, WI 53186
(414) 224-0000
ljohnson@crosslawfirm.com

Attorneys for Plaintiff