IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRIAN TEED, on behalf of himself
and all others similarly situated,                          OPINION and ORDER

                    Plaintiffs,

                                                            08-cv-303-bbc

          v.

THOMAS & BETTS POWER SOLUTIONS, LLC,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARCUS CLAY,                                                OPINION and ORDER

                    Plaintiff,

                                                            09-cv-313-bbc

          v.

THOMAS & BETTS POWER SOLUTIONS, LLC,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

          This wage and hour collective action under the Fair Labor Standards Act (FLSA), 29

U.S.C. §§ 201-219, consolidates two separate lawsuits, Teed v. JT Packard & Associates,

Inc., Case No. 08-cv-303, filed on May 28, 2008, and Clay v. JT Packard & Associates, Inc.,

Case No. 09-cv-313, filed approximately one year later on May 19, 2009.  Thirty plaintiffs

1

have opted into the case and it is scheduled for a jury trial on February 13, 2012. However, defendant Thomas & Betts Power Solutions, LLC has moved to decertify the collective action, contending that because plaintiffs Brian Teed, Marcus Clay and the opt-in plaintiffs are not "similarly situated," their claims cannot be adjudicated collectively. Also, defendant has moved to dismiss seven of the opt-in plaintiffs for failing to cooperate in discovery.

After reviewing the parties' arguments on this issue, the evidence in the record and plaintiffs' proposed plan for trial, I conclude that this case is not fit for adjudication as a collective action because plaintiffs are not similarly situated. In particular, plaintiffs cannot use the testimony of a small number field engineers to represent absent opt-in plaintiffs because there is too great a variation in work experiences among the named and opt-in plaintiffs. Therefore, I will decertify this collective action. Because I am decertifying this case, I need not consider defendant's motion that certain opt-in plaintiffs should be dismissed from the case for failing to cooperate in discovery. I will deny that motion as moot.

Although this case cannot proceed collectively, I conclude that it would not be too difficult to manage the case with up to 30 named plaintiffs. Therefore, I will give plaintiffs an opportunity to amend their complaint to name some or all of the opt-ins as named plaintiffs.

PROCEDURAL AND FACTUAL BACKGROUND

Initially, plaintiff Teed filed a suit against defendants JT Packard & Associates, Inc. and S.R. Bray Corp. under the FLSA and state law to recover for unpaid overtime work he performed as a field engineer while employed at JT Packard.  According to his complaint, Teed worked for JT Packard as a field engineer and performed maintenance and emergency services for JT Packard's customers at various site locations.  Dkt. #23.  (Throughout this opinion, I will use docket numbers from the Teed case, 08-cv-303-bbc.)  Teed worked out of a home office where he received assignments for scheduled maintenance and was required to monitor his cell phone for emergency dispatch.  Teed's complaint describes a variety of tasks that he performed at home, in addition to his on-site scheduled and emergency maintenance work, including checking email, viewing a service calendar, calling customers and completing field service reports.  Teed and other field engineers recorded travel and labor time for specific assignments on "field service reports."  Field engineers also used field service reports to record the actions they performed at a customer site.  Teed and other field engineers did not record time spent in administrative tasks in their field service reports. Until September 2009, Teed and other field engineers received a fixed salary each week and were not paid overtime wages.

On September 16, 2008, the parties in Teed's case filed a "joint stipulation regarding conditional certification" of plaintiff Teed's FLSA claims under 29 U.S.C. § 216(b).  (Teed never moved for class certification of his state law claims.)  The court conditionally certified

3

a class of field engineers on October 3, 2008 and authorized mailing of notice to potential opt-in plaintiffs.  Following the issuance of court-approved notice, 25 field engineers opted into the suit.  JT Packard did not move to decertify the collective action, and in an order dated March 9, 2009, I concluded that Teed could proceed as a class representative on behalf of those plaintiffs who had opted in to the FLSA action.  Dkt. #55.

On May 19, 2009, plaintiff Clay initiated a second identical FLSA lawsuit against JT Packard & Associates.  Although Clay never moved for certification of an FLSA collective action, four additional consent-to-join forms were filed in Clay's lawsuit.

In late 2009, defendants JT Packard and its parent corporation, S.R. Bray Corporation, filed a motion to dismiss or stay proceedings pending the outcome of a state receivership proceeding; that motion was denied.  In 2010, Thomas & Betts purchased the assets of JT Packard in receivership proceedings and in late 2010, plaintiffs filed a motion to substitute Thomas & Betts as the defendant in this case under Fed. R. Civ. P. 25(c).  I granted that motion on November 23, 2010.  Dkt. #103.

At the time Thomas & Betts was substituted as a party-defendant, the parties had conducted very little discovery.  The court issued a new preliminary pretrial conference order on January 28, 2011, establishing a discovery cut-off date of November 15, 2011.  Dkt. #108.  The parties stipulated to consolidation of the two cases on February 8, 2011.  Dkt. #110.

On November 1, 2011, I decided a partial summary judgment filed by plaintiffs.  I

4

denied plaintiffs' motion in large part because plaintiffs' arguments were either premature, undeveloped or not appropriate for resolution at summary judgment.  I granted the motion with respect to defendant's defenses that it does not qualify as plaintiffs' employer, that plaintiffs failed to mitigate their damages and that defendant has a good faith defense under the 29 U.S.C. § 259.  Dkt. #127.  In the order on plaintiffs' motion for summary judgment, I noted that defendant did not deny that field engineers were entitled to overtime pay for any overtime hours that they worked after August 2006.  Id. at 7.  In other words, defendant has not argued that field engineers were properly classified as exempt between August 2006 and September 2009.  Rather, the principal dispute between the parties is whether plaintiffs worked hours in excess of 40 hours each week and if so, how many.  Id. at 4.  In their summary judgment materials, plaintiffs proposed no specific findings of fact regarding whether plaintiffs had worked overtime hours or how many overtime hours they had worked. In fact, they did not rely on any affidavits or deposition testimony from any field engineers in support of their motion.

RECORD EVIDENCE

Defendant Thomas & Betts has served written discovery on all 30 named and opt-in plaintiffs and has deposed Teed, Clay and several opt-in plaintiffs regarding their overtime claims.  These discovery efforts have shed light on the work experiences and claims of the named and opt-in plaintiffs.

Field engineers did not work a regular schedule.  They were scheduled to respond to customer calls for maintenance or emergency service within their territory when such a need arose.  Defendant has produced field service reports that contain data reflecting the wide variation in the time that opt-in plaintiffs spent traveling and working at customer sites.  The labor and travel hours reported by plaintiffs Teed and Clay, as well as every opt-in plaintiff, varied from one to two hours each week to more than 60 hours.  This makes sense.  The field engineer's primary duty was to provide scheduled maintenance and "on-call" emergency repair services for customers across a wide geographic range.  Sometimes customer sites were a short drive away; other times an opt-in plaintiff may have had to drive more than seven hours to a customer site.  The opt-in plaintiffs did not work the same routes or provide service to the same customers.

Through their deposition testimony, plaintiffs Teed and Clay and other opt-in plaintiffs confirmed that their schedules varied on a week-to-week basis.  For example, Teed testified that in some weeks he worked only 5, 10 or 15 hours of travel and on-site labor, while in others he worked more than 40.  Teed Dep., dkt. #132-1, at 175-76.  Clay testified that he almost never worked fewer than 40 hours in a week and that any field service reports reflecting fewer than 40 hours are inaccurate and should be adjusted to 40.  Clay Dep., dkt. #132-2, at 166.

Additionally, the deposition testimony reveals that opt-in plaintiffs spent a wide range of time performing tasks in addition to travel and on-site work.  For example, opt-in

6

plaintiffs offer a wide variety of estimates concerning the time they spent engaged in "tech support" or conferring with other field engineers regarding maintenance and repair questions. Opt-in plaintiff Henry Chau testified that, with the exception of "hard" tech support calls he dealt with at home once a month, he generally provided tech support while traveling to or from customer sites. Chau Dep., dkt. #132-5, at 45-47. Plaintiff Michael Kehrmeyer testified that he spent approximately five to ten hours each week providing tech support to other field engineers and that 75% of the tech support he provided occurred either on site or during recorded travel time. Kehrmeyer Dep., dkt. #132-3, at 39-40. In contrast, plaintiff Clay testified that he provided tech support only when he was at home and that tech support calls could last between two minutes and four hours. Clay Dep., dkt. #132-2, at 90-93. Opt-in plaintiff Kraft testified that he spent 20 to 30 *hours each week* providing tech support. Kraft Dep., dkt. #132-7, at 45-46, 157 (testifying that his phone "never stopped ringing" at all hours of day and night). For his part, opt-in plaintiff Timothy Hershey "wouldn't want to guess" how much time he spent providing tech support in an average week. Hershey Dep., dkt. #132-6, at 47.

Plaintiffs testify to a wide variation of practices with respect to loading and unloading their vehicles. Plaintiffs Teed and Kehrmeyer spent about 10 to 15 minutes loading and unloading tools and equipment from their cars on the days they had scheduled assignments, Teed Dep., dkt. #132-1, at 86; Kehrmeyer Dep., dkt. #132-3, at 35-36; opt-in Kraft spent an hour each day doing so, Kraft Dep., dkt. #132-7, at 80-81; and opt-in Chau did not

7

spend any time loading and unloading his tools because he stored his equipment in his trunk.  Chau Dep., dkt. #132-5, at 42-43.

Some field engineers were required to pick up necessary tools and equipment on their own time and others were not.  Opt-in plaintiff Chau testified that 85% of the time, parts and equipment were shipped to his home or the customer site directly, though sometimes he spent four or five hours in a week picking up or dropping off parts, id. at 64-68; opt-in Hershey testified that "nine times out of ten" he picked up equipment on his way to and from client sites and performed errands in connection with "site time."  Hershey Dep., dkt. #132-6, at 58, 66-68; and Clay testified that 90% of the time he made separate unrecorded trips to pick up or drop off parts and spent one hour every other week shopping for air filters to use on the job.  Clay Dep., dkt. #132-2, at 37-38, 140.

Plaintiff Teed spent approximately two hours each month reading manuals, Teed Dep., dkt. #132-1, at 108; opt-in plaintiff Chau read manuals approximately once a month, Chau Dep, dkt. #132-5, at 46-47, 53; opt-in Hershey read manuals two or three times a month, Hershey Dep, dkt. #132-6, at 55; and Clay testified that he spent at least six to 10 hours *each week* at home reading manuals related to work, Clay Dep., dkt. #132-1, at 109-11.

When asked how he would compare his working time with other field engineers, Teed stated that it would be like "comparing apples to oranges" and that he believed other field engineers performed "a lot more work" than he did.  Teed Dep., dkt. #132-1, at 99, 130, 188-89.  He testified that he had no way to estimate the hours that he actually worked,

stating that he could "guesstimate" 20 hours of "unrecorded" time each week on various work-related activities, id. at 117, 184, but admitting this is "just a number that [he] was picking out of the air." Id. at 183.  Teed also testified that the guess of 20 hours of unrecorded hours applied only to weeks when he actually was assigned work or a certain threshold of work, and there were weeks that he had no work or very little work scheduled. Id.  For his part, Clay contends that he should be compensated for 10 to 15 hours of unpaid overtime each week, regardless what his field service report says.  Clay Dep., dkt. #132-2, at 167-68.

OPINION

A.  Certification of Collective Actions under the FLSA

It is necessary to reexamine the propriety of collective treatment in this case in light of the evidence that has been developed during discovery and plaintiffs' proposed plan for presenting their claims.  District courts are '"charged with the duty of monitoring [their] class decisions in light of the evidentiary development of the case. The district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."'  Espenscheid v. DirectSat USA, LLC, 2011 WL 2009967, *4 (W.D. Wis. May 23, 2011) (quoting Richardson v. Byrd, 709 F.2d 1016, 1019 (5th Cir. 1983)); see also Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890, 896 (7th Cir. 1981) ("If the certification of the class is later deemed to be improvident,

the court may decertify"); Baldridge v. SBC Communications, Inc., 404 F.3d 930, 931 (5th Cir. 2005) (certification of a collective action under § 216(b) of FLSA is "subject to revision before the district court addresses the merits"); In re School Asbestos Litigation, 789 F.2d 996, 1011 (3d Cir. 1986) ("When, and if, the district court is convinced that the litigation cannot be managed, decertification is proper."); Walker v. Bankers Life & Casualty Co., 2008 WL 2883614, *9 (N.D. Ill. July 28, 2008) ("If certification is later deemed improvident at any time during the course of litigation, a court may decertify the class."); Blihovde v. St. Croix County, 219 F.R.D. 607, 614 (W.D. Wis. 2003) (district court "can decertify the class at any time before a decision on the merits").

Under the FLSA, one or more employees may pursue an action in a representative capacity only if they are "similarly situated" to the employees they represent.  29 U.S.C. § 216(b).  This standard takes into account (1) whether the factual and employment settings of the individual plaintiffs are similar or disparate; (2) whether defendants may assert various defenses that appear to be individual to each plaintiff; and (3) whether fairness and procedural considerations support proceeding as a collective action.  Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001); Espenscheid, 2011 WL 2009967, *4; Russell v. Illinois Bell Telephone Co., 721 F. Supp. 2d 804, 811 (N.D. Ill. 2010); Mielke v. Laidlaw Transit, Inc., 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004).

In many cases, collective actions provide efficiency and judicial economy in wage and hour disputes because a court may resolve common factual and legal questions

collectively on the basis of evidence that is representative of the whole.  However, the more dissimilar plaintiffs' job experiences are from one another and the more individualized an employer's defenses are, the less appropriate the matter is for collective treatment.  The problems with collective adjudication of the claims in this case have become more pronounced as it approaches trial.

B.  The Claims in this Case

Defendant contends that the evidence revealed during recent discovery establishes that opt-in plaintiffs are not similarly situated and that no individual field engineer could act as an adequate representative for absent opt-in plaintiffs.   Plaintiffs disagree, contending that they are similarly situated because the "core issue" to be decided at trial is "whether Defendant's Field Engineers should receive overtime premium compensation for hours they worked in excess of forty in a workweek."  Plts.' Br., dkt. #133, at 5; see also id. at 9 ("plaintiffs all claim the same JT Packard uniform policy violated the FLSA"); id. at 10 ("the core issue in this case is whether JT Packard violated the FLSA"); id. at 11 ("the core issue for trial is whether JT Packard violated the FLSA by failing to pay overtime compensation to its Field Engineers").

This court has held that "[w]hen the plaintiffs are challenging a 'uniform policy,' class certification is likely to be appropriate because it is more efficient to determine the validity of that policy in the context of a single lawsuit."  Spoerle v. Kraft Foods Global, Inc., 253

11

F.R.D. 434, 440 (W.D. Wis. 2008).  However, the core issue to be tried to a jury in this case is not whether defendant improperly classified field engineers as exempt from the overtime protections of the FLSA under a uniform policy.  Defendant concedes that plaintiffs were eligible for overtime compensation.  The primary issues that must be decided by a jury are whether plaintiffs in fact worked overtime hours and if so, how many hours they worked. Plaintiffs make little effort to show that they are similarly situated with respect to these issues.

Instead, plaintiffs blame defendant's inadequate time-keeping practices and records for plaintiffs' inability to show that they are similarly situated.  Plts.' Br., dkt. #133, at 18 ("Defendant now wishes the collective action [to] be blown up because its own failure caused varying testimony as to the amount of time worked."); id. at 20 ("Decertifying this case because there is variation in the amount of time it took plaintiffs to perform certain tasks is improper in light of defendant's failure to maintain proper records of the hours plaintiffs worked.").  Plaintiffs contend that because defendant did not keep adequate records, plaintiffs are entitled to provide estimates of the time they spent performing unrecorded work as prescribed in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946).

Anderson does not relieve plaintiffs of their burden of showing that they are similarly situated.  In that case, the Supreme Court held that in an FLSA action in which the employer's records are "inaccurate or inadequate and the employee cannot offer convincing substitutes," "an employee has carried his burden if he proves that he has in fact performed

work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" Id. "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. In Anderson, the Court did not hold that employees may proceed collectively if a defendant maintains inadequate records. In fact, it is difficult to see how the court's discussion in Anderson is relevant to the "similarly situated" analysis.

Plaintiffs also argue that well-established law allows plaintiffs in collective actions to prove their case on a collective basis through the use of testimony from representative employees. Plaintiffs propose to introduce the testimony of eight plaintiffs at trial who will testify about the number of hours they worked in excess of what was recorded on their field service reports. Plaintiffs say that the court can use this testimony to calculate an average number of uncompensated overtime hours and then add those hours to the hours plaintiffs recorded on the field service reports to calculate damages.

Although it is true that collective evidence and representative testimony is appropriate in properly certified collective actions, such evidence is appropriate only if it is actually representative. The idea of representative proof is that plaintiffs could provide testimony from a sample of field engineers who can provide detailed information regarding their own experiences, which can then be extrapolated to the remainder of the group without

13

significant error.  In this case, plaintiffs have not explained how they would choose eight representative field engineers that would be representative of the whole class or, in light of the wide variation in experiences, why it would be appropriate to extrapolate the findings from a small sub-set of individuals to the absent opt-in plaintiffs.  Additionally, plaintiffs have not proposed an expert witness who will support their arguments.  Without an expert, it is not clear who would testify that extrapolating from the eight field engineers is scientifically or statistically appropriate.

The field service reports and the deposition testimony of opt-in plaintiffs in the record illustrate the wide differences in employment experiences among individual employees and the problem with using a small subset of technicians to represent the whole.  Judging from the evidence in the record, no single field engineer's testimony would be representative of an absent engineer's experiences.  Moreover, using the field service reports as a baseline would be improper because plaintiffs do not agree among themselves whether the field service reports accurately reflect time they worked traveling and on-site.  Thus, there is too great a chance that the determination by a jury of the "average" number of uncompensated hours worked by opt-in plaintiffs each week would be unreliable and would result in rewarding some field engineers who have already been compensated fully while simultaneously reducing the awards to which others are entitled.

The Supreme Court's recent decision in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) is instructive.  Although collective actions under the FLSA are not

subject to the provisions generally associated with class actions under Fed. R. Civ. P. 23 (such as numerosity, commonality and typicality), the Court's discussion of the propriety of class actions generally provides guidance in deciding when certification of a collection action under the FLSA is appropriate.  In Dukes, the Court noted that "[w]hat matters to class certification . . . is not the raising of common 'questions —even in droves— but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."  Id. (emphasis in original; internal citations omitted).

Thus, it is not enough for plaintiffs to raise a common question as to whether they and other field engineers are owed overtime compensation.  Rather, the answer to that question must be susceptible to proof that can be extrapolated to the class plaintiffs seek to represent.  In this case, the evidence reveals substantial variations among the opt-in plaintiffs.  At a high level of generality, the opt-in plaintiffs perform similar job duties.  But in terms of individual experiences, the evidence shows that opt-in plaintiffs and class members have different work experiences and different claims for overtime compensation.  Therefore, this case cannot proceed to a jury trial on a collective basis and must be decertified.

C.  <u>Conclusion</u>

After the case is decertified, only the named plaintiffs' claims remain in the case.  This means that the opt-in plaintiffs must file their own lawsuits if they wish to pursue their claims.  As plaintiffs point out, some of the opt-in plaintiffs may have such small claims that they will choose to forgo enforcement of their rights after decertification.  However, because there are only 30 opt-in plaintiffs and I do not think it would be too difficult to manage a case with 30 named plaintiffs, I will give plaintiffs an opportunity to amend their complaint to add some or all of these opt-in plaintiffs as named plaintiffs.  Because this case has been pending for nearly four years and the parties have had ample time to conduct discovery related to the claims of all opt-in plaintiffs in this case, an amended complaint that makes no change except to name the opt-in plaintiffs as individual plaintiffs should not be prejudicial to the parties.  Plaintiffs may have until January 24, 2012 to file such an amended complaint. Also, before January 24, 2012, plaintiffs and defendants should confer about whether they will be ready to try the claims of the plaintiffs who will be named in the amended complaint on February 13, 2012.  The parties should notify the court on January 24, 2012 regarding their decision about whether the case can proceed to trial on February 13. The parties should not consider that they may continue this case for an unlimited length of time.  It is my intention to try it no later than March 2012.

Finally, plaintiffs raised questions about issue preclusion and the statute of limitations for those former opt-in plaintiffs who choose to file their own individual suit.  Such

16

questions are premature at this stage.  They should be raised to the court in which the former opt-in plaintiffs choose to file their individual claims, if they choose not to join this lawsuit as named plaintiffs.


ORDER

IT IS ORDERED that

1.   Defendant Thomas & Betts Power Solutions, LLC's motion to decertify the collective action and dismiss certain opt-in plaintiffs, dkt. #130, is GRANTED IN PART and DENIED IN PART.  Defendant's motion to decertify the class is GRANTED. Defendant's motion to dismiss certain opt-in plaintiffs is DENIED as moot.

2.   This case is DECERTIFIED as a collective action.  The claims of all opt-in plaintiffs are DISMISSED WITHOUT PREJUDICE, leaving before the court the named plaintiffs who originated these actions.

3.   Plaintiffs Brian Teed and Marcus Clay may have until January 24, 2012 to file an amended complaint in which they amend only the named party-plaintiffs.

17

4.  Plaintiffs and defendants may have until January 24, 2012 to notify the court whether they are ready to proceed to trial with this case on February 13, 2012.

Entered this 11th day of January, 2012.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

18